STATE, Respondent, v. DAVIES, Appellant.

(145 N. W. 719.)

1. **Criminal Law—Continuance—Absence of Witness—Motion—Requisites.**

A motion for continuance for absence of witness must show that testimony of absent witness is material, that accused has used due diligence to procure attendance of witness or his deposition, and that it is reasonably certain that the witness or his testimony will be procured by the time to which the trial would be postponed.

2. **Same—Continuance—Absence of Witness—Witness' Presence at Next Term—Affidavit—State's Admissions as to Testimony.**

Where an affidavit for continuance for absence of a witness stated that accused had tried to get into communication with him in Colorado, where he had shortly before gone on business, but had been unable to do so, that he had promised affiant to appear and testify in his behalf at the present term of court, that witness was not absent through procurement or connivance and fault of accused, and that deponent knows that witness would return before the next term of court and the

court would procure his testimony at that term, **held**, the affidavit did not state facts making it appear reasonably certain that witness would be present at the next term, but stated mere conclusions, and was insufficient; and trial court rightly refused to require the state to make admission that witness would testify to facts stated in the affidavit.

    · Smith, P. J., and Polley, J., dissenting.

3. **Same—New Trial—Neglect of Defendant's Attorney—False Affidavit For Continuance.**

    Where one of grounds · for motion for new trial was neglect of one of defendant's attorneys in preparing for trial and in fully stating facts in an affidavit for continuance, and it appeared on the trial that the affidavit submitted on motion for continuance was untrue, **held**, that, assuming that there were facts that would justify such additional statement, defendant was not prejudiced by denial of the continuance, and the trial court did not thereby abuse its discretion.

    Smith, P. J., and Polley, J., dissenting.

4. **Criminal Law—Continuance—Alleged Witness a Myth—Prejudice.**

    Even if it was error to deny a motion for continuance, judged of from the court's viewpoint at the time it was made, yet, where it appears from subsequent developments on the trial that the alleged witness, whose absence was the ground of the motion, was a myth, accused was not prejudiced by denying the continuance.

    Smith, P. J., and Polley, J., dissenting.

5. **Same—New Trial—Newly Discovered Evidence—Insufficient Showing.**

    Where the alleged evidence upon which a motion for new trial was asked, was not newly discovered, and, outside of defendant's affidavit, there were no facts sworn to in numerous other affidavits that were inconsistent with his guilt, a new trial was properly refused.

    Smith, P. J., and Polley, J., dissenting.

6. **New Trial—Neglect of Counsel—Failure of Justice.**

    A new trial should not be granted for neglect of defendant's attorney, except in an extreme case and to prevent a clear failure of justice.

7. **Grand Larceny—Evidence.**

    In a prosecution for cattle theft, evidence **held** sufficient to sustain a conviction.

    Smith, P. J., and Polley, J., dissenting.

(Opinion filed February 14, 1914.)

Appeal from Circuit Court, Tripp County. Hon. WILLIAM WILLIAMSON, Judge.

Thomas Davies, the defendant, was convicted of grand larceny, and he appeals. Affirmed.

*W. J. Hooper* and *O. D. Olmstead,* for Appellant.

If it appears from the nature of the case and all the facts that a party is entitled to a continuance, the refusing to grant the same would not be a matter of sound judicial discretion, but an abuse of discretion and therefore error. 9. Cyc. P. 72. Jones v. State (Arkansas), 138 S. W. 967; Hobbs v. State, (Ga.), 68 S. E. 515; State against Hesterley (Mo.) 81 S. W. 624, 103 Am. St. Rep. 634; Madison against State (Okla.) 118 Pac. 617; State against Wilcox, 21 S. D. 532; Smith against State (Texas) 114 S. W. 827; Rule 17 of the Circuit Court Rules; Constitution, Art. VI, Sec. 7; Rev. Civ. Code, Sec. 2430.

The motion for a new trial should have been granted upon ground of newly discovered evidence. Sec. 7, Bill of Rights; Amendment VI, Constitution of the United States.

With Mr. Davies' testimony corroborated by the testimony of the witnesses who made the affidavits, he would not have been convicted. This testimony was not produced because of the incompetency and negligence of R. H. Molitor, his attorney. If the incompetency or ignorance of counsel is so great as to prejudice defendant, and prevent him from fairly presenting his defense, a new trial should be granted. State against Jones, 12 Mo. App., State v. Louis, 9 Mo. App., 321; Roper v. Territory, 7 New Y. ex. page 255, 33 Pac. 1014; State v. Swain, 30 La. Ann. 1323.

*Royal C. Johnson,* Attorney General, *M. Harry O'Brien.* Assistant Attorney General, for Respondent.

The ruling of the trial court denying the continuance was correct and proper.

Who is this man Jones, that his testimony as a witness should bear so materially upon the guilt or innocence of this defendant? He is not mentioned by other witnesses who testify to having seen the defendant driving the stolen cattle. Defendant omits any reference whatever to the said Jones in his affidavit for a new trial, nor does any reference to this man Jones appear in any of the affidavits which were filed in the motion for a new trial. Defendant had no right to rely upon the promise of said Jones. State v. Philips, 18 S. D. 1, 98 N. W. 171, 5 A. & E.

Ann. Cas. 700. The defendant should have had a subpœna is-sued for the alleged witness or his evidence taken at the earliest possible date, State v. Philips, supra. Section 535, Crim. Pro.; State v. Pirkey, 22 S. D. 550, 118 N. W. 1042 18 A. & E. Ann. Cas. 192. The facts herein constitute a clear case of lack of diligence. Armour & Co. v. Kollemeyer, 161 Fed. 78, 16 L. R. A. (N. S.) 1110. Nor is the failure of defendant's attorneys to secure the attendance of witnesses a ground for reversing the trial court's ruling in denying the continuance. Ry. Co. v. Knox, 90 Ark. 1, 117 S. W. 779, 134 Am. St. Rep. 17; Deere & Webber Co. v. Kinckley, 20 S. D. 359, 106 N. W. 138. Even though it should appear that defendant had not made any preparations whatever to meet the charge which the information advised him would be presented, the trial court did not abuse its discretion in denying the continuance, upon the peculiar facts and circumstances of this case. State ex rel. Hallam v. Lally, 134 Wis. 253, 15 A. & E. Ann. Cas. 242; State v. Branddell, 26 S. D. 642, 129 N. W. 242.

It does not sufficiently appear from the affidavit that the witness Jones would have been present at a subsequent trial, had the continuance been granted. State v. Philips, supra; Chambers v. Modern Woodmen of America, 18 S. D. 173, 99 N. W. 1107; Note in 122 Am. St. Rep. 745; 9 Cyc. 181. The Affidavit does not contain a reasonable assurance that the attendance of the witness can be procured for a future trial. In view of the preponderance of the State's evidence, it is highly improbable that the said Jones would swear to the facts set forth in the affidavit for continuance, and it is altogether probable that such testimony, if presented, would be untrue. 9 Cyc. 179.

GATES, J. The defendant was convicted of grand larceny. The precise offense charged was the stealing of six head of cattle belonging to one Frank Maulis, a near neighbor of defendant, on February 21, 1912. This appeal is taken from the judgment and order denying a new trial. The only assignments of error relied upon are the action of the court in denying the motion of the defendant to continue the case and denying the motion for a new trial. The case was called for trial on May 8, 1912, which was the same date that the defendant pleaded to the information. Thereupon the defendant on his motion for a continuance pre-

sented an affidavit the substance of which was that he could not safely proceed to trial without the testimony of one Lewis Jones; that Jones was a material witness for the defendant; that there was no one else by whom the facts sought to be proven by Jones could be proven; that in a conversation with Jones on or about April 15, 1912, Jones "faithfully promised this defendant to voluntarily appear and testify in behalf of this defendant at this term of court; that on or about the 1st day of May, 1912, this defendant came to Winner, Tripp county, to have a subpoena issued and served on said Jones, but on arriving at Winner he learned and found that said Jones had gone to the state of Colorado on business, and would not return until the fore part of June or the latter part of May, 1912; that this defendant tried to get into communication with the said Jones, but has been unable to do so since he has left the state of South Dakota; * * * that the said witness Lewis Jones is not absent from this state through any procurement or connivance and fault of this deponent; and that this deponent knows that the said Jones will return to Tripp county S. D., before the next term of this court and the court will procure his testimony at said term." It is claimed in the affidavit that if Jones were present he would testify that Jones was with the defendant during all the period of his trip overland from Witten, S. D. to Naper, Neb., and part way back, and that it would have been impossible for this defendant to have stolen the cattle from the complaining witness during that time without the knowledge of Jones and that Jones would testify that the defendant did not take, steal, or carry away any cattle nor have them in his possession. No counter affidavits were presented upon said motion for continuance, and thereupon the court entered an order finding the motion and affidavit insufficient and denied the same.

[1] In State v. Wilcox, 21 S. D. 532, 114 N. W. 687, the three principal requisites of an affidavit upon a motion for continuance in a criminal case are set forth. These are: First, that the testimony of the absent witness must be material; second, that the defendant has used due diligence to procure the attendance of the witness or his deposition; third, that it is reasonably certain that the presence of the witness or his testimony will be procured by the time to which the trial would be post-

poned. And the court, speaking through Haney, J., said: "If the showing fails in either of these respects, the application to continue should be denied."

[2] We are of the opinion that the affidavit failed to comply with the third requisite. The statements of the defendant are entirely matters of conclusion unaccompanied by any facts that would have justified the trial court in believing that it was reasonably certain that the witness would be present at the next term of court. It is not sufficient for the affiant to state conclusions. He must set forth facts upon which the reasonableness of a belief can be based. 9 Cyc. 204; State v. Philips, 18 S. D. 7, 98 N. W. 171, 5 Ann. Cas. 760; Chambers v. Modern Woodmen of America, 18 S. D. 173, 182, 99 N. W. 1107; State v. Wilcox, 21 S. D. 532, 114 N. W. 687. Unless it appeared reasonably certain that Jones would return, defendant was not entitled to a continuance to procure his presence. Such affidavit did not make it appear that it was reasonably certain that Jones would return, nor was there anything in such affidavit that would make it reasonably certain that, if defendant so desired, he would be able to procure the deposition of Jones provided Jones remained out of the state. Of course, if there was no showing that defendant could probably procure either the presence or the deposition of Jones, then the state could not have been required to admit that Jones, if present, would have testified to the matters contained in such affidavit, even if the court had been asked to require such admission. Therefore the motion for continuance was rightfully overruled, and the court committed no error in not requiring the state to make the admission that Jones would have testified to the facts stated in such affidavit.

After the denial of such motion, no request was made by the defendant for any continuance for the purpose of securing witnesses

[3-4] In view of the fact that one of the grounds for the motion for a new trial was the alleged neglect of one of defendant's attorneys in preparing for trial, we deem it proper to state that in our opinion the proceedings had at the trial show that the affidavit of the defendant submitted upon application for continuance was untrue. Therefore he was not prejudiced by any failure of his attorney to more fully state the requisite facts

in such affidavit, even assuming that there were facts which would justify such additional statement. We think that the trial court acted within its discretion in denying the continuance; but, even if it was error to deny the motion from the viewpoint at the time the motion was made, it appears from the subsequent development of the case that no such person as the alleged witness Jones accompanied the defendant upon his trip, and that the affidavit for the continuance was false in that respect. Therefore the action of the trial court should not be disturbed at this time. Blumen v. State, 33 Tex. Cr. R. 43, 21 S. W. 1027, 26 S. W. 75; 9 Cyc. 208. While it is true that in his testimony defendant stated in general terms that Jones was with him from Witten to Naper and thus far corroborated his affidavit theretofore made, still, when the defendant come to give the details of his trip showing the various places that he stopped and the names of the persons who saw him, he entirely omitted any mention of Jones. So far as appears from the evidence and from the ten affidavits accompanying the motion for a new trial, nobody saw Jones with the defendant on his overland trip. Furthermore, in his affidavit on the motion for continuance, the defendant stated that Jones and he spent the entire day of February 21, 1912, in the town of Witten. In his testimony he said that on February 21, 1912: "I dug post holes on my place close to my home and worked there most all day. I did not go anywhere that day." Again, in the affidavit on the motion for continuance defendant said that Jones was a resident of Tripp county. Upon the trial he testified, "Jones is a farmer in Gregory county, around Herrick." From the whole record we cannot help but believe that the man Jones is a myth.

[5-6] It is claimed by defendant that he left his home, which was about five miles north of Witten, on February 23, 1912, with a load of hogs; that he went to Witten, thence to Winner, thence to Colome, thence to Dallas, where he sold the hogs, thence to Burke, thence to his other place about four miles south of Herrick, thence to the farm of one John Giedd a short distance over the South Dakota line into Nebraska. The cattle were seen with the defendant by two witnesses towards sundown on the 25th day of February, 1912, near the other farm of defendant, south of Herrick in Gregory county, a distance of

about 60 miles by direct line and not to exceed 80 miles by section lines from where the cattle were stolen. The witness Giedd testified that he found the cattle on his farm on the 26th of February, and that Davies claimed that they were his and asked Giedd to take care of them for him until he should move down to his other place. There is no direct testimony connecting defendant with the possession of the cattle in Tripp county. There is, however, strong circumstantial evidence to that effect. Defendant asked for a new trial upon the further ground of newly discovered evidence. It appears clearly that this evidence was not newly discovered, and that outside of the affidavit of defendant himself there are no facts sworn to in the ten affidavits presented upon the motion for a new trial that are inconsistent with the defendant's guilt. The only real ground urged for the new trial is the neglect of defendant's attorney in his not having subpoenaed the witnesses by whom defendant might prove his claim of alibi. It is certain that a new trial should not be granted owing to the neglect of defendant's attorney except in an extreme case and to prevent a clear failure of justice. People v. McCann 247 Ill. 130, 93 N. E. 100, 29 Ann. Cas. 499. If defendant's affidavit had shown that he advised his counsel of the names of parties whom he had met on his claimed trip through Winner and Colome, and if, in addition thereto, there had been presented the affidavits of such parties claiming to have met defendant at Winner and Colome on the afternoon or evening of February 23d, it would have presented a showing upon which we think the trial court should have granted a new trial, as, with such facts proven, it would render it impossible for a jury to believe the defendant guilty of the crime. But the facts, as they appear from the record, are that, while defendant, when a witness, swore to seeing a butcher at Winner and to feeding his horses at a certain farmer's and also to making certain inquiries at Colome, in his affidavit asking for a new trial he does not state that he advised his attorney of these facts and of the names of these persons, neither do any such persons present affidavits. It is clear to us that defendant was at Witten about 3 o'clock, as testified by him and as claimed by the stockbuyer in his affidavit. Undoubtedly he did not have the cattle with him at that point, as he had undoubtedly driven them, either on the 21st or the 22d, to some point east

or northeast of there. His trip into Witten might well have been a mere blind. There was plenty of time after he left Witten for him to have gone over to the Johnson place, picking up the cattle meanwhile. The jury could well believe that he was at the Johnson place and also at Witten. In February it is dark as early as 6 to half past 6 o'clock. It would not be impossible for him, especially when trying to throw people off their guard, to have driven from Johnson's to Dallas before morning. There is no evidence of any other person, either upon the trial or in the affidavits offered, to show that he was seen at Dallas before 7 o'oclock in the morning, full 12 hours from the time he passed the Johnson place. In a new country the roads are undoubtedly largely across country, and a diagonal road from Johnson's to Dallas would be but some 30 to 32 miles; this he could have made during the night. The fact that parties saw him at or near his other place in Gregory county and that, when they saw him, there were no cattle in sight, is of little value. The proof of a negative in this case would in no manner weaken the testimony of the affirmative as testified by several of the state's witnesses, as he may not have been with these cattle at all times.

[7] Waiving the question as to whether the evidence brought forward upon the motion for a new trial was newly discovered, and conceding the defendant to have been seen by the persons at the times and places as shown in the affidavits upon the motion for a new trial ;the facts set forth in said affidavits are not inconsistent with the fact that the defendant drove the cattle from Tripp county to the place where they were seen in Gregory county and thence into Nebraska. Defendant would have to have done much driving by night in order to have covered the distance between the farm of the complaining witness and his own farm south of Herrick and to have been at the places testified to in the affidavits; but he admitted on the trial that during a part of the trip he did travel by night, arriving at Dallas between 2 and 3 o'clock a. m. on February 24th. While the testimony implicating the defendant with the removal of the cattle from Tripp county to Gregory county is circumstantial, the clear impression that is left in our minds by a careful study of the evidence is that it

is the defendant who removed them. We are convinced that the defendant was justly convicted of the crime.

The judgment and order denying a new trial are affirmed.

SMITH, P. J. (dissenting). I feel impelled to dissent from the conclusion reached by the majority of the court in this case. I do not believe the accused has been accorded his legal right to a fair trial on the question of his guilt or innocence. The evidence against him is wholly circumstantial, and the jury were not instructed as to the probative weight of that character of evidence. It may be that the accused cannot urge this as error because no request for such instruction was made. The majority opinion, however, in effect, tries out the question of guilt in a discussion of the evidence; but even in this discussion the court does not give the accused the benefit of the rule referred to. The rule is well stated in Bowen v. State, 140 Ala. 65, 37 South, 233: "The test of the sufficiency of circumstantial evidence, in a criminal case, is whether the circumstances, as proven, are capable of explanation upon any reasonable hypothesis consistent with the defendant's innocence, and, if they are capable of such explanation, then the defendant should be acquitted." The matters of evidence discussed, I think, should be submitted to a jury; and this end could be attained only by a new trial. The allegation that such a man as Jones exists is unchallenged by the state, except by the mere theory that the accused may have been lying in his affidavit for continuance. That the evidence it is alleged that he would give, if present at the trial, is material, cannot be doubted. That the accused was not guilty of laches in failing to have the witness in court is perfectly clear. That the witness will be present at the next term of court is positively averred in the affidavit, and is evidently founded on the promise of the witness to be present and testify at the trial. Affiant could hardly be called upon to state further facts, in view of the unexpected absence of the witness from the state. I think the continuance should have been granted by the trial court, and that this court exceeds its authority when it states that: "The clear impression that is left in our minds by a careful study of the evidence is that it is the defendant who removed them (the cattle). We are convinced that the defendant was justly convicted of the crime." I am willing to admit that the court makes a good argument to prove defendant's

guilt; but, so far as we know, it was never presented to a jury. It should be addressed to a jury by the state's attorney, after the accused has had an opportunity to place before them all the competent evidence in his behalf, and an opportunity should be given his counsel to answer it as best they may. If, after such a hearing, a jury shall say the accused is guilty, he can have no just ground of complaint. He is entitled to and should have a fair trial, whether guilty or innocent, and this, in my judgment, is denied him by the decision of this court.

POLLEY, J. (dissenting). I fully concur in what is said by SMITH, P. J., but I think there are other reasons than those set out in his dissenting opinion why the judgment of conviction should be reversed and a new trial granted. It appears from the record that the defendant had a preliminary examination and was bound over to the circuit court some time during the month of March, 1912. He employei a practicing attorney as his counsel and left the matter of conducting his defense entirely in the hands of such counsel. The information upon which defendant was tried was filed on the 7th day of May, 1912. On the following day he pleaded not guilty to this information, and without being allowed any time at all for the preparation of his defense, was forced into trial immmediately upon entering his plea. The record shows conclusively that there were a number of material witnesses whose presence and testimony was necessary in the defendant's behalf. Some of these witnesses lived at such a distance from the place of trial that they could not possibly have been subpœnaed, upon subpœnaes issued after the filing of the information, and have reached the place of trial in time to give their testimony. The defendant had no notice that an information would be filed against him on the 7th day of May, nor even that an information would be filed against him at all—much less had he any knowledge of the date upon which the case would be moved for trial, even taking it for granted that an information would be filed. Moreover, it appears that the attorney whom he employed to conduct his case made no preparation whatever for the trial. This, in itself, is no evidence of negligence on the part of defendant nor his counsel, or that there was any lack of diligence on the part of either. There is no presumption that an information will be filed against a person although he has been accused of a

crime and has been bound over to the circuit court to answer therefor, and, until an information has been filed, such person is not bound to go to the expense of subpœnaing witnesses to testify on his behalf. A person charged with a crime is entitled to a sufficient length of time, after the information has been filed and before the date of his trial, to subpoena his witnesses and make necessary preparations for trial. But, in addition to this, I think the defendant's showing for a continuance was amply sufficient to entitle him to such continuance. If the absent witness would have testified to the facts set out in defendant's affidavit, and, for the purpose of the motion, it must be conclusively presumed that he would have so testified, then his testimony would have proved conclusively that the defendant was not guilty of the offense charged in the information. Whether or not his testimony would have been the truth was a matter to be passed upon by the jury, and one upon which the court had no right to entertain an opinion.

It is claimed in the argument by the respondent, and so stated in the majority opinion, that there are such discrepancies between the defendant's affidavit for continuance and his testimony given on the stand that they indicate that the affiffidavit was untrue. This conclusion is not warranted by the facts. It is true that there were some discrepencies but they were no greater than the discrepencies in the testimony of the witnesses for the prosecution, and they were such discrepencies as are susceptible of explanation, had they been called to the defendant's notice when he was on the witness stand. The affidavit contained all the requisites for a continuance under the rule stated in State v. Wilcox, cited in the majority opinion. It not only showed that the testimony of the absent witness was material, but that it would be decisive in the case. The defendant had used all the diligence to procure his attendance that could be used up to the time the witness left the state. Defendant had seen him, talked over the matter of his testimony with him, and the witness had promised, faithfully, to be in attendance at the trial. It is difficult to see what more, in the course of due diligence, the defendant could have done; unless the court intends to lay down the rule that a man who has been bound over to answer for a public offense must proceed to subpœna his witnesses and get

ready for trial before an information has been filed and before he knows, or has any way of knowing, when their attendance in court will be required. The defendant stated in his affidavit, postively, that, if the continuance were granted, the witness would return and be present and give his testimony at the next term of court. This, taken in connection with the witness' promise to attend and give his testimony, is as near to a certainty in regard to the future conduct of any one as it is possible to get. There is no such thing as giving absolute assurance of the future conduct of any one; he may change his mind, his return may be prevented by circumstances over which he has no control, and he has no certainty that he will not be overtaken by death before the date set for such return. Neither were the statements of the defendant relative to the return of the witness matters of conclusion unaccompanied by any facts that would have justified the trial court in believing that it was reasonably certain that the witness would be present at the next term of court. The witness had given defendant his promise to be present, and defendant had no intimation that he intended to leave the state, nor had he any reason for taking the witness' deposition. Moreover, the very labored argument in the majority opinion, found necessary to uphold the trial court in denying the continuance, is, of itself, very convincing that the court erred in such denial. But, even though the continuance were properly denied, the court should at least have postponed the trial long enough to have given the defendant time to subpoena such witnesses as were within the jurisdiction of the court, and, because of the failure of the court to give him such opportunity, the court deprived the defendant of his constitutional right to a fair and impartial trial.

But if we were to concede that the defendant did have a fair trial, I think the judgment ought to be reversed and a new trial granted, because of the newly discovered evidence set out in the affidavits presented on the motion. The defendant was a farmer in Gregory county having a farm about four miles south of Herrick, in that county—but was living on a government homestead in the northwest corner of Tripp county and was therefore a resident of Tripp county. The complaining witness and one Daniel Wier (a witness for the prosecution) lived in the immediate vicinity with defendant. The cattle that were the

subject of the larceny were at home on the 21st day of February, 1912, but were missed by the owner that night. He made diligent search for them during the next few days and, on the 1st day of March, found them in the possession of one John Giedd, about two miles northwest of Naper, in the state of Nebraska, and at a distance of about 100 miles from home. It was on Sunday, the 25th of February, at the place of one Ed. Johnson, about nine miles southeast of home, that the complaining witness found the first trace of his cattle. He learned there that a man, with some cattle and a wagon, had passed by on the evening of Friday the 23d. He testified that he found the tracks and recognized them as the tracks of his cattle because they were the tracks of three large and three small animals, and the wagon track accompanying them was the track of defendant's wagon because it had been made by a wagon with wide tires. Defendant's wagon had wide tires. He followed the track of this wagon and these cattle for a distance of 24 or 25 miles to a place about 9 miles north of Colome, which, according to his testimony, would have been about thirty-three or thirty-four miles from home, and from the defendant's place. From there he continued his search in the same general direction and by inquiry until he located his cattle, as above stated, in the possession of the said John Giedd, who testified that the cattle were brought to his place and delivered to him by the defendant.

The witness Daniel Wier testified that the defendant came to his place on the morning of Friday, the 23d day of February. Defendant told the witness that he was going to Herrick and expected to be gone five or six days, and made arrangements with the witness to take care of the defendant's stock while he (the defendant) was gone. Defendant told witness that he was going to go home and load up a couple of hogs and take them to town. Defendant left the witness' place about 11 o'clock, but the witness saw him again about 4 o'clock in the afternoon of the same day going across the prairie. The defendant testified that, after returning home from the witness Wier's, he loaded up a couple of hogs and took them to Witten, where he tried to sell them to a butcher, by the name of Short, but, being unable to agree on a price, no sale was affected, and he continued on to Dallas, which place he reached late at night, and, in the morning, disposed of his

hogs, transacted some other business, and, that afternoon, continued on to Burke. This testimony is corroborated by the affidavit of said Short, used by defendant on his motion for a new trial, from which it appears that defendant was in Witten with hogs on the afternoon of the 23d, and, judging from the distance he was obliged to drive to reach there, he must have been in Witten at about the time the cattle, answering the description of the stolen ones, were driven past the farm of the said Johnson. This same Johnson was a witness for the prosecution in the case and testified that some catttle were driven past his place just after dark, on the evening of the 23d, and that the man driving them had a team and wagon, but he saw no hogs in the wagon; nor did he know whether it was a four-horse team or not. Defendant's testimony (that he was in Dallas, during the forenoon of February 24th) is corroborated by a number of affidavits that were used on the motion for a new trial; among others, that of the postmaster, whose records showed that he sold the defendant a money order that morning, and the affidavit of the butcher who bought the hogs. It is conceded that the defendant did not take the stolen cattle with him from home on the 23d of February, and that he did not have them with him in Witten on the afternoon of that day.

The majority opinion is based upon the assumption—although there is not a suggestion of evidence to that effect in the entire record—that the defendant took these cattle some time during the 21st or 22d of February and cached them at or near the farm of the witness Johnson; that he then returned home, and, on the afternoon of the 23d, went to Witten with his load of hogs, but that his trip to Witten was only a blind; and that, from there, he drove to the place where he had cached the cattle, from which place it was only 30-odd miles to Dallas, and that: "It would not be impossible for him, especially when trying to throw people off their guard, to have driven from Johnson's place to Dallas before morning. There is no evidence of any other person or upon the trial or in the affidavits offered to show that he was seen at Dallas before 7 o'clock in the morning, full 12 hours from the time he passed Johnson's place. In a new country, the roads are undoubtedly largely across country, and a diagonal road from Johnson's

to Dallas would be some 30 to 32 miles. This he could have made during the night."

This, too, is based entirely upon assumption. There is no evidence to show whether the distance from Johnson's place to Dallas was 32 miles or 40 miles, and the only evidence tending to show what time the defendant reached Dallas shows that he reached there between 2 and 3 o'clock in the morning. Neither is there any evidence to show that the roads run "across country and diagonal," or that the distance assumed could have been covered by the defendant, with loose cattle, in 12 hours; and it would be impossible to make any jury, of 12 sane men who knew anything about cattle, believe that any man could drive a four-horse team and wagon and six head of loose cattle across an open country a distance of more than 30 miles, in the dark, in that length of time.

Again, there is not one scintilla of evidence in the record that in any wise connects the defendant with the stolen cattle in Tripp county. The only time he is ever claimed to have been seen with, or in the same neighborhood with, these cattle is in the vicinity of Burke, in Gregory county, and a distance of 12 or 15 miles from the boundary line of Tripp county. This fact, in connection with the other conceded facts, shows that he could not have been connected with the larceny of these cattle unless he had an accomplice who started with them a day or two ahead of defendant and was driving them while defendant was at Witten and Dallas and on the road with his hogs between these two places and his homestead in Tripp county. But the record nowhere contains any suggestion of an accomplice.

It may be true, as stated in the majority opinion, that the defendant did not explain to his counsel the facts and circumstances set out in the affidavits used on the motion for a new trial; neither does it appear that his counsel who had charge of his case at that time ever took any steps whatever to learn the facts in the case or made any preparation whatever for the defense, and it is certain that no time was allowed by the court, after the filing of the information, for his counsel to ascertain the facts or to make any preparation for the trial. But, whether his counsel was negligent in the matter or not, it was none the less the duty of the court to see that the defendant was given a constitutional trial,

and this he did not have.  I think the court committed reversible error, both in denying the continuance and the defendant's application for a new trial.