STATE of South Dakota, Plaintiff
and Appellee,

v.

John Francis MORIARTY, Defendant
and Appellant.

No. 18620.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1994.

Decided July 19, 1995.

Mark Barnett, Atty. Gen., Patricia J. Froning, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Julie Irvine, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

John Francis Moriarty appeals his conviction for second degree rape contending the trial court abridged his right to confrontation when the child victim's statements were admitted through the testimony of the baby-sitter. We affirm.

### FACTS

We briefly summarize the facts in this second appeal. For a more detailed rendition see *State v. Moriarty*, 501 N.W.2d 352 (S.D.1993) (*Moriarty I*). In 1991, S.M., an eight year old girl, informed her mother that her stepfather, Moriarty, molested her as they took a bath together. Later, S.M. told her baby-sitter, twelve-year-old Leah De-Wald, Moriarty had anally raped her. At DeWald's request S.M. drew several pictures

to describe what had happened to her. The authorities were eventually notified, leading to Moriarty's indictment for second degree rape.

At the first trial, when asked about the circumstances surrounding S.M.'s drawings, DeWald's response included S.M.'s out-of-court statements detailing the sexual abuse. Moriarty appealed asserting his confrontation rights had been violated by DeWald's hearsay testimony. *Moriarty I.* SDCL 19–16–38 * requires that before such hearsay can be used, the State must give notice of intent to offer it and the court must, pursuant to a hearing held outside the presence of the jury, determine if the proffered hearsay has sufficient indicia of reliability. *Id.* at 355. Due to lack of notice and hearing, this Court reversed and remanded for a new trial. *Id.* at 357.

During the second jury trial in October 1993, essentially the same hearsay was admitted, again without a prior hearing. Moriarty was once more found guilty and sentenced to seventy-five years in the penitentiary, with twenty-five years suspended on the condition he not reside with a child under the age of fifteen. We review the following issue: Were Moriarty's confrontation clause rights violated by the hearsay testimony from DeWald?

## DECISION

The trial court initially scheduled a hearing pursuant to SDCL 19–16–38 to consider De-Wald's hearsay testimony, but canceled the hearing after the following exchange with counsel:

STATE: ... I asked the question to Leah, I said, did you suggest to [S.M.] what to draw ... And she said, well, yes. Well then, I expected her to say no. But she said yes. And I said, well, what did you suggest. And she said, well, she said he stuck it up my butt hole. And I said what do you mean by that. And so I had her draw three holes and then we named 'em. COURT: I understand. I understand. So what you do in this case is you do not ask her that question and you instruct her not to say anything that—that the victim said to her during the drawing, just to describe what—what the victim did, not what the victim said. Then, I'll leave it up to the defendant whether or not the defendant wants to go into any suggestions that she may have made ... That is, did you tell her what to draw. Let's make sure that she's going to say no. Or don't ask her the question. Because that's not asking for anything the victim says, that's only asking for what she said. And of course if she—and then let's forget the suggestion business because her answer—the suggestion is yes, I did make some suggestions. The best way to do that is leave that out.

Moriarty persisted in wanting a hearing, but the court chose, rather than have the hearsay hearing, simply to preclude the hearsay.

■ Moriarty contends that at trial "the State asked the very questions" it was told not to ask; therefore, Moriarty's confrontation rights were denied in absence of a "reliability" hearing. In reviewing the transcript, we note that when questioning approached the topic which led to the reversal in *Moriar-*

* SDCL 19–16–38 provides:

A statement made by a child under the age of ten, or by a child ten years of age or older who is developmentally disabled as defined in § 27B–1–3, describing any act of sexual contact or rape performed with or on the child by another, or describing any act of physical abuse or neglect of the child by another, or any act of physical abuse or neglect of another child observed by the child making the statement, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings against the defendant or in any proceeding under chapter 26–7A, 26–8A, 26–8B and 26–8C in the courts of this state if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time,

content and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness.
However, if the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
No statement may be admitted under this section unless the proponent of the statement makes known his intention to offer the statement and the particulars of it, including the name and address of the declarant to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

*ty I*, the prosecutor asked DeWald to describe the circumstances surrounding S.M.'s drawings "without telling the jury what was said" by S.M. Almost every question, none of which invoked hearsay, resulted in a straight "yes" or "no" answer. DeWald's responses to the State's questions cannot in any way be construed as out-of-court statements. One specific question, however, Moriarty contends forced him to offer the precluded hearsay.

■ S.M. had testified DeWald neither told her what to draw nor helped her draw the pictures. When asked on direct examination if she had "told" S.M. what to draw, DeWald responded in the negative. Based upon her testimony at the first trial, Moriarty's attorney challenged DeWald's answer on cross-examination. DeWald then admitted she had "suggested" to S.M. what to draw. Thereupon defense counsel attempted to elicit the specific "suggestions" by referring to DeWald's answers from the first trial, which included the hearsay. The trial court then ruled that if Moriarty wanted to impeach DeWald with her testimony from the *Moriarty I* transcript, her complete answers would have to be read. To show DeWald's inconsistency and to attempt to show S.M.'s sexual abuse episodes were "suggested" to S.M. by DeWald, Moriarty's counsel had DeWald read her prior answers. Some jurors had trouble hearing DeWald, so the trial judge himself then re-read one of DeWald's prior answers to the jury. Consequently, the hearsay deemed inadmissible absent a "reliability" hearing in the first trial was again revealed to the jury.

■ The defense sought to assail the verity of S.M.'s accusations by proposing DeWald may have molded S.M.'s account of the sex abuse. To accomplish this, defense counsel took a calculated risk in attempting to discredit the State's case by using testimony deemed inadmissible if offered by the State. Moriarty claims he was forced to use this hearsay as impeachment when the prosecutor asked DeWald if she "told" S.M. what to draw, resulting in a negative answer, which the prosecutor knew was untrue. First, based on the pretrial dialog with the court quoted above, both sides were well aware

DeWald might give a different response, depending on whether the question was posed with the word "told" or "suggested." These words have distinct connotations. Second, even if counsel felt obliged to inquire further based on the State's question, we believe it was not altogether necessary for the defense to impeach with the prior testimony because DeWald freely admitted making suggestions on what S.M. should draw. With this admission, Moriarty had other options: He could have left the transcript alone and instead asked what suggestions were made or he could have prefaced questions in the same way the State did: "Without telling the jury what S.M. said ..." No, Moriarty evidently wanted to use S.M.'s statements to show how DeWald's "suggestions" were reflected in S.M.'s version of events. Thus the decision to take this tack on impeachment was not compelled. A party cannot voluntarily introduce objectionable evidence the court previously agreed to keep out and then count on the admission as error. *See State v. Holloway*, 482 N.W.2d 306 (S.D.1992); *State v. Vogel*, 315 N.W.2d 321 (S.D.1982). Otherwise, a litigant could always contrive a reversal. The State may have knocked on the door, but the defense opened it. *State v. Burtzlaff*, 493 N.W.2d 1, 6 (S.D.1992).

Moriarty did not request an immediate cautionary instruction, but at the end of the trial the court read a pattern instruction to the jury concerning prior inconsistent statements. It warned, "[Y]ou must not consider any such prior statement as establishing the truth of any fact contained in that statement." Indeed, the statements at issue here were not used to prove the truth of the hearsay but to prove a prosecution witness suggested details of sexual abuse to the victim. As Moriarty himself offered the out-of-court statements and the trial court properly instructed the jury on the limited purpose for considering those remarks, we find no violation of Moriarty's confrontation rights.

Lastly, Moriarty argues the State committed prosecutorial misconduct when the deputy states attorney elicited allegedly false testimony from DeWald and violated the court's in limine order in questioning Dr. Willman.

Our review of the record reveals these issues to be nonmeritorious.

Affirmed.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

WUEST, Retired Justice, dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.

WUEST, Retired Justice (dissenting).

I believe the hearing should have been held as provided by SDCL 19–16–38. Defense counsel was put in an untenable position when the State was allowed to put in a part of the evidence—describing the circumstances without the oral statements—thereby putting a spin on the evidence prejudicial to the defendant. It would not have been that difficult to hold a hearing as the law provides. The charges in this case are repugnant to decent and normal people. However, we should not forget the fact mistakes are made and trial courts should follow the statutes to avoid them. I would reverse for the same reason as given in *Moriarty I*.