1996 SD 88

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Donald Anthony LETCHER, a/k/a Tony Letcher, Defendant and Appellant.**

No. 19368.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Decided July 17, 1996.

Mark Barnett, Attorney General, Jennifer K. Trucano, Assistant Attorney General, Pierre, for plaintiff and appellee.

Mike C. Fink and Timothy W. Bjorkman of Bjorkman Law Offices, Bridgewater, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Donald Anthony Letcher, a/k/a Tony Letcher, appeals his conviction of two counts of sexual contact with a child under sixteen. He claims the trial court improperly admitted rebuttal testimony regarding sexual dysfunction problems Letcher allegedly had. He also claims the trial court abused its discretion by refusing to grant him a continuance to present a witness who would respond to this testimony. We reverse and remand for a new trial.

## FACTS

[¶ 2] From August 1992 until July 1993, Letcher lived with Y.F., her minor daughter J.E., and two minor sons. They first lived in Bridgewater, South Dakota, and then briefly in Howard, South Dakota. On occasion, Letcher stayed home with the children while Y.F. worked.

[¶ 3] In February 1995, J.E. told her stepmother that Letcher had touched her breasts and made her touch his penis when he had lived in her home. These statements were then reported to the police.

[¶ 4] On March 24, 1995, the State charged Letcher with two counts of sexual contact with a child, in violation of SDCL 22–22–7. On June 12, 1995, he filed a motion for discovery. The trial court ordered the State to fully comply with this motion and specifically required it to disclose:

... [A]ll evidence in possession and control of the State, or others, when the evidence may be favorable to the Defendant and material to the issue of guilt or punishment, or could reasonably weaken or affect any evidence proposed to be introduced against the Defendant, or is relevant to the subject matter of the Complaint and information, or in any manner may aid the Defendant in the ascertainment of the truth; the disclosure and production to be made without regard to whether the evidence to be disclosed and produced is deemed admissible at the trial herein; said disclosure and production to include, but not limited to, the following evidence:

\*   \*   \*   \*   \*   \*

2. The memoranda or summaries of any oral statement made to any agent of the State of South Dakota or any of its municipalities by any person in connection with the subject matter of this case, whether or not:

   (a) the statement, if in writing, has been signed, or approved by the witness; and

   (b) the statement relates to the proposed subject matter of the direct testimony of the witness at trial.

[¶ 5] On June 12, 1995, the State filed a motion to allow the hearsay testimony of Y.F., the mother of J.E. The State attached a portion of Y.F.'s statements to the grand jury as an indication of the testimony to be offered. This testimony involved J.E.'s reports of nightmares and J.E.'s father and stepmother informing Y.F. about J.E.'s allegations of abuse.

[¶ 6] The morning of the trial, the court held a hearing concerning State's motion to allow this hearsay testimony. During Y.F.'s testimony at this hearing, she testified, for the first time, that Letcher had difficulty maintaining an erection and often played with himself to keep his penis erect.

[¶ 7] Letcher's trial counsel [1] moved to prevent the State from introducing this evidence about Letcher's alleged sexual dysfunction on the grounds that the State had not disclosed that evidence in advance of trial as required by the court's discovery order. State coun-

tered that Letcher was aware of the witnesses to be called by the State and his counsel could have interviewed those witnesses to determine their testimony. The trial court granted Letcher's motion.

[¶ 8] At trial, J.E. testified that Letcher rubbed her chest and made her rub his penis in a circular motion. She indicated his penis was erect some times and not erect at other times. Statements J.E. made to an abuse investigator indicated that Letcher never ejaculated during the alleged incidents of molestation. J.E. stated the sexual contact happened almost every night while Letcher lived in her home and her mother was at work. J.E. was eight and nine years old at the time of the alleged abuse.

[¶ 9] Y.F. also testified in the State's case-in-chief. She testified that, when Letcher lived with her, he often took care of her children when she was at work. She further testified that J.E. had frequent nightmares while Letcher lived with them.

[¶ 10] Letcher contended J.E. had made up the allegations or had been coached to tell a story of abuse. He presented the testimony of Dr. Michael J. McGrath, an expert clinical psychologist in sexual abuse cases. McGrath identified various aspects of J.E.'s testimony that caused him to question the credibility of her allegations. These "red flags" included: (1) a child custody fight between J.E.'s mother and father; (2) the use of sexual terms, including "penis," that are not generally appropriate for a child J.E.'s age; (3) J.E.'s claim that she rubbed Letcher's penis in a circular motion, rather than an up and down motion; (4) the absence of any progression of sexual contact over time; and (5) J.E.'s assertion that Letcher did not reach a climax when he had her rub his penis.

[¶ 11] Letcher testified, denying the claimed sexual abuse. No mention was made of any sexual dysfunction. However, on cross-examination, in response to questions from the prosecutor, he denied having any problems with sexual functioning.

[¶ 12] When the defense rested, State recalled Y.F. as a rebuttal witness. Outside of

---

**1.** The attorney who represents Letcher on appeal     was not his counsel at trial.

the presence of the jury, Letcher moved to exclude any testimony by Y.F. about her sexual relationship with Letcher, arguing that he had not raised the issue of his sexual performance during his direct testimony, and the State could not make that an issue through cross-examination. Letcher also contended the State had failed to disclose Y.F's statements regarding her sexual relationship with Letcher sufficiently in advance of trial to allow Letcher to prepare. He advised the court that he wanted to offer the testimony of a former girl friend (T.F.) who would state that she had normal sexual relationships with Letcher and that there were never any problems with him maintaining an erection or completing sex. He claimed that because of the surprise and timing of the evidence he had been unable to subpoena T.F.

[¶ 13] Considering the credibility issues, and in light of Dr. McGrath's opinion testimony, the trial court denied the motion to exclude Y.F.'s rebuttal testimony concerning her sexual relationship with Letcher.

[¶ 14] During State's rebuttal, Y.F. testified that when she lived with Letcher, it "wasn't an active sex life" and that he had difficulty maintaining an erection, "played with himself a lot" and "had trouble getting ejaculated."

[¶ 15] Following Y.F.'s testimony, Letcher moved for a continuance, claiming surprise. In denying the motion for continuance, the trial court stated:

Well, in this particular matter, the Court did initially grant the motion in limine with respect to this subject matter, the sexual relationship between [Y.F.] and Mr. Letcher; it became quite obvious to the Court when Dr. McGrath was called that the type of testimony that was being produced through Dr. McGrath would lead to this type of testimony being relevant on rebuttal and I think that's a matter that certainly was something that you obviously were aware of, particularly as of last night prior to Dr. McGrath's testimony, when you were trying to locate the witness. It's now 2 in the afternoon and all the other witnesses have testified. We're at the close of this case, it's ready to go to the jury, the

Court has scheduled tomorrow numerous cases in Chamberlain, and I guess we have waited—if she was to be here at 1, it's now 2:08—we have given some leeway for her to arrive as prompt as possible. Under the circumstances, it's the obligation of the counsel to make sure they get their witnesses subpoenaed and take every action to get her here. Of course, that is if in fact she would even testify as you feel she would. I understand the basis for your expectation, but nevertheless, I think this—it indicates you had an opportunity over the last couple days to be prepared on these issues and to have the witnesses here and you don't have any other witnesses present at this time; I'm going to deny your request for a continuance. The record can reflect you made the motion.

[¶ 16] The State rested its rebuttal case and Letcher returned to the stand. He testified that he had no problems in his sexual relationship with Y.F., or with his previous girl friend, T.F.. He testified that T.F. had been asked to come to court to testify on his behalf, but she was not present. The defense rested.

[¶ 17] The case was submitted to the jury, and the jury returned a verdict of guilty on both counts of sexual contact with a minor. The trial court sentenced Letcher to two concurrent prison terms of twelve years, seven years suspended.

[¶ 18] Letcher appeals. He contends the trial court abused its discretion in admitting Y.F.'s rebuttal testimony concerning her sexual relationship with him and his alleged sexual problems. Alternatively, Letcher asserts the trial court abused its discretion in refusing his request for a continuance.

## ISSUES

[¶ 19] **1. Did the trial court abuse its discretion when it permitted Y.F. to testify about Letcher's alleged sexual problems?**

[¶ 20] The record indicates that Letcher was unaware of Y.F.'s proposed testimony concerning his purported sexual dysfunction until the morning of the trial, when the testi-

mony was revealed during a pretrial motion hearing. The State does not dispute that it failed to advise Letcher of this evidence until that time. The record indicates the trial court sustained Letcher's pretrial objection to this testimony on the grounds it was not previously disclosed to Letcher. Letcher argues the trial court should have again refused Y.F.'s testimony during State's rebuttal, due to the State's failure to disclose this testimony in accordance with the broad discovery order.

[¶ 21] The trial court's evidentiary rulings are reviewed on an abuse of discretion standard. *State v. New,* 536 N.W.2d 714, 718 (S.D.1995). Likewise, the remedy for nondisclosure of discoverable information is left to the sound discretion of the trial court. *State v. McKee,* 314 N.W.2d 866, 869 (S.D.1982) (Henderson, J., concurring). Abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. *New,* 536 N.W.2d at 718 (citing *State v. Moriarty,* 501 N.W.2d 352 (S.D.1993)).

[¶ 22] The critical question in this case is whether the evidence presented by Letcher in his case-in-chief justified the court's modification of its earlier ruling concerning Y.F.'s disputed testimony. We conclude that the trial court's ruling was proper.

[¶ 23] SDCL 23A–13–17 addresses the remedies available when a party fails to comply with discovery requirements. This statute states in relevant part:

> If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

[¶ 24] State argues Letcher "opened the door" to the admission of Y.F.'s rebuttal testimony when his expert, Dr. McGrath, questioned the credibility of J.E.'s allegations due to her reports that Letcher did not ejaculate.

[¶ 25] Our earlier opinions have permitted the State to introduce otherwise inadmissible evidence when a criminal defendant's trial strategy has "opened the door" to the evidence. *See New,* 536 N.W.2d at 718.

[¶ 26] We conclude that Letcher's presentation of evidence "opened the door" to the admission of Y.F.'s testimony. Letcher's expert, Dr. McGrath, questioned the credibility of J.E.'s testimony based on her reports that Letcher did not ejaculate when his penis was stimulated by J.E. By offering this testimony, Letcher sought to capitalize on the State's inability to counter with evidence of Letcher's alleged sexual difficulties. Dr. McGrath's testimony invited the jury to make the logical inference that Letcher's sexual functioning fell within clinical norms and therefore J.E.'s allegations were not believable. Once Letcher actively raised this inference, prohibiting the introduction of evidence to refute it was not "just under the circumstances." *See* SDCL 23A–13–17. We therefore hold the trial court did not abuse its discretion when it permitted Y.F. to give rebuttal testimony concerning her relationship with Letcher and his alleged sexual problems. *See, e.g., State v. Moriarty,* 534 N.W.2d 841, 843 (S.D.1995) (once defense counsel attempted to discredit the State's case by using testimony deemed inadmissible if offered by the State, defense could not complain of admission of this evidence); *Kremer v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, 770 (S.D.1993) ("Otherwise inadmissible evidence, including hearsay evidence, may become admissible if the objecting party 'opened the door' on direct examination."); *State v. Burtzlaff,* 493 N.W.2d 1, 5–6 (S.D.1992) (once defendant "opened the door" to prejudicial prior bad acts, State could cross-examine concerning these acts); *State v. Loop,* 477 N.W.2d 40, 41–42 (S.D. 1991) (when defendant accused of sexual contact with a minor testified on direct examination that "[a] ten-year-old girl wouldn't sexually gratify me," State was properly permitted to question defendant about his prior sex offenses); *State v. Byrum,* 399 N.W.2d 334, 337–38 (S.D.1987) (where defendant testified he had strong feelings against the use of drugs, he opened the door to

State's cross-examination concerning drug sales by the defendant).

### [¶ 27] 2. Did the trial court abuse its discretion when it denied Letcher's motion for a continuance?

[¶ 28] It is undisputed that Letcher first became aware of Y.F.'s testimony concerning Letcher's alleged sexual dysfunction on the first day of his two-day trial. At that time, however, the court ruled Y.F.'s testimony inadmissible by the State. Once Letcher had concluded his defense on the second day of the trial, the court reversed its earlier ruling and permitted the admission of Y.F.'s testimony during State's rebuttal. After Y.F. testified, Letcher moved for a continuance to the next day, claiming prejudice due to his inability to subpoena a witness to rebut Y.F.'s testimony on such short notice. The trial court denied the request, and Letcher claims this was reversible error.

[¶ 29] The decision whether to grant or deny a request for continuance is within the sound discretion of the trial court and will not be reversed absent a showing of clear abuse. *State v. Shape*, 517 N.W.2d 650, 656 (S.D.1994).

[¶ 30] We have identified three requirements that must be met in order to obtain a continuance when a witness is absent. These are: (1) the testimony of the absent witness is material; (2) the defendant has used due diligence to procure the attendance of the witness or his deposition; and (3) it is reasonably certain the presence of the witness or his testimony will be procured by the time to which the trial would be postponed. *State v. Davies*, 33 S.D. 243, 247–48, 145 N.W. 719, 720 (1914) (citing *State v. Wilcox*, 21 S.D. 532, 114 N.W. 687 (1908)). All three of these requirements are satisfied here.

[¶ 31] First, T.F.'s expected testimony was material. Dr. McGrath's expert opinion raised the issue of Letcher's sexual functioning as it related to the credibility of J.E.'s allegations. Unbeknownst to Letcher's counsel until the day of the trial, a witness for the State, Y.F., was prepared to testify that Letcher had problems maintaining an erec-

tion and completing sex. This testimony bolstered J.E.'s credibility by indicating that J.E.'s account was consistent with sexual problems Letcher experienced in his relationship with Y.F. Also, T.F.'s expected testimony, that Letcher experienced unimpaired sexual functioning, could refute Y.F.'s claims and therefore was material to the case.

[¶ 32] Second, we cannot agree with State's contention that Letcher failed to use due diligence in procuring T.F.'s appearance as a witness. Letcher was unaware of Y.F.'s disputed testimony until the first morning of this two-day trial. Additionally, the trial court ruled the evidence was inadmissible and did not reverse its ruling until the start of the State's rebuttal case on the second day of trial. "An accused is entitled as a matter of right to a reasonable opportunity to secure evidence on his behalf[.]" *State v. Dowling*, 87 S.D. 532, 534, 211 N.W.2d 572, 573 (S.D. 1973). Notice of previously requested evidence received on the day of trial defies adequate trial preparation. Letcher's failure to procure T.F.'s appearance can hardly be attributed to his lack of diligence. Letcher's counsel made contact with T.F., through Letcher's mother, during the evening of the first day of trial. Counsel managed to communicate the nature of the testimony sought and secure T.F.'s promise to appear, in spite of her obligation to appear in court in another city on the same day.

[¶ 33] We cannot fault counsel for his failure to also deliver a subpoena to T.F. during the brief break in the trial proceedings. Generally, a defendant cannot be heard to complain when he has failed to subpoena an absent witness.

> A defendant held to answer at the circuit court for the commission of crime cannot safely rely on the promises of witnesses to appear at the trial and testify, but he must see that they are subpoenaed, or their evidence taken, when it can properly be done, at the earliest possible date, in order to be in a position to ask for a continuance on account of their absence.

*State v. Phillips*, 18 S.D. 1, 11, 98 N.W. 171, 174–75 (1904). However, this rule is necessarily contingent on a finding that the defendant had ample time to procure the appear-

ance of the witness. *See State v. DuBray*, 298 N.W.2d 811, 815 (S.D. 1980) ("We refuse to find an abuse of discretion in the trial court's failure to grant a continuance, where defendant has neither subpoenaed nor otherwise preserved evidence of a material witness and where there was ample time to act."); *Phillips*, 18 S.D. at 9–10, 98 N.W. at 174 (holding there was no abuse of discretion where defendant failed to use sufficient diligence to secure the attendance of witnesses in the twelve days before trial). As noted above, Letcher was not apprised of Y.F.'s testimony prior to trial, despite an order by the trial court requiring the State to disclose such information. We cannot conclude he lacked diligence in making his attempts to procure the witness' appearance during the short break in the trial proceedings.

[¶ 34] Third, we conclude it was reasonably certain that the presence of the witness or her testimony could be procured at a later time, such as the following day. Letcher's counsel informed the trial court that T.F. was willing to testify. Letcher's mother had spoken to T.F. the day before, so her whereabouts were apparently known. Counsel informed the court of the witness' obligation to appear in court in another city on the same day, a legitimate reason for failing to appear at Letcher's trial. Counsel represented to the court that he would procure T.F.'s appearance or testimony the following day. Under the circumstances, we conclude the trial court abused its discretion in failing to grant a continuance to permit T.F. to testify.

[¶ 35] Finally, where there are no other direct witnesses to allegations of sexual abuse, the credibility of the complaining witness and the defendant is a key determination. By refusing to permit T.F.'s delayed testimony, the trial court severely prejudiced Letcher's ability to defend against these charges. Meanwhile, the State would have suffered little, if any, prejudice by granting the continuance to Letcher. *See In re Adoption of C.T.E.*, 485 N.W.2d 591, 594 (S.D. 1992) (noting the prejudice to the parties resulting from a decision to grant or deny a continuance is a factor to be considered by

the trial court). Additionally, the trial court's busy schedule the following day was not an adequate reason to jeopardize Letcher's right to a fair trial.

[¶ 36] In light of the prejudice to Letcher's defense, we reverse and remand for a new trial.

[¶ 37] SABERS and AMUNDSON, JJ., concur.

[¶ 38] KONENKAMP and GILBERTSON, JJ., concurring in part and dissenting in part.

GILBERTSON, Justice (concurring in part and dissenting in part).

[¶ 39] I respectfully dissent on Issue II. To me there must be an evidentiary basis to overturn this conviction on an abuse of discretion standard of review. I would submit that such evidence cannot be found in this record. We have defined an abuse of discretion as:

> An abuse of discretion has been defined by this Court as a decision which is not justified by and clearly against reason *and evidence.* We will not reverse a decision if 'we believe a judicial mind, in view of the law and the circumstances could reasonably have reached that conclusion.'

*Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713, 715 (S.D.1995) (citations omitted) (emphasis added).

[¶ 40] I agree with the majority that three requirements must be met in order to justify a continuance for an absent witness: (1) the testimony of the absent witness is material; (2) the defendant has used due diligence to procure the attendance of the witness or her deposition; and (3) it is reasonably certain the presence of the witness or her testimony will be procured by the time to which the trial would be postponed. *State v. Davies*, 33 S.D. 243, 247–48, 145 N.W. 719, 720 (1914). If the defendant fails on any of the above three criteria, the trial court has not abused its discretion and there is no basis for reversal of the conviction. *State v. Shape*, 517 N.W.2d 650, 656 (S.D.1994).[2]

---

2. We have also recognized the prejudice to the parties resulting from the decision to grant or deny a continuance is a factor to be considered by the trial court. *In re Adoption of C.T.E.*, 485 N.W.2d 591, 594 (S.D.1992). The evidentiary nature of the "testimony" that would have sup-

In my opinion the Defendant has failed to establish the first prong, that being the "testimony" of the absent witness is material. The trial court was informed by the defense counsel that T.F. had told her story to the Defendant's mother who had told it to defense counsel. Thus, what was presented to the trial court was not evidence, but counsel's description of hearsay upon hearsay. The trial court, in its ruling denying the motion for continuance pointed this out when it said, "[o]f course, that is if in fact she would even testify as you feel she would."

[¶ 42] Given the lack of prior notice to the Defendant, he claims this is the best that could be done under the circumstances. However the Defendant failed to provide an evidentiary basis to allow the trial court to consider the importance of this so-called "evidence" by failing to establish of the nature of T.F.'s testimony which could have been done after the trial.

[¶ 43] SDCL 23A–29–1 allows a motion for new trial to be made within ten days after filing of the judgment. The Defendant represented he would obtain T.F.'s attendance in one day.[3] This motion could have been brought either under SDCL 15–6–59(a)(4) newly discovered evidence, or (a)(7) error of law in rejection of evidence. This could have been done by live testimony of T.F. at the hearing, *Pickering v. State*, 260 N.W.2d 234 (S.D.1977), by affidavit, *State v. Gerdes*, 258 N.W.2d 839 (S.D.1977), or deposition, *State v. Furlow*, 87 S.D. 634, 213 N.W.2d 705 ( 1973).

[¶ 44] Until such time as I am provided with some actual evidence as to the nature of T.F.'s testimony, I am unprepared to state that hearsay upon hearsay is a proper basis

to find the trial court abused its discretion and this conviction should be overturned.

[¶ 45] I concur in Issue I.

[¶ 46] I am hearby authorized to state that Justice KONENKAMP joins this dissent.

---

posedly been given by T.F. was not withheld from the jury. The Defendant testified in rebuttal contrary to the testimony of Y.F. with the same evidence that defense counsel represented would be given by T.F. if T.F. were present to testify. Thus, the nature of the claimed testimony of T.F. would not be new evidence but only bolsters the testimony already given by the Defendant.

3. The question of whether the Defendant could have complied with the third prong of the test, that being it is reasonably certain the presence of

the witness or her testimony will be procured by the time to which the trial would be postponed, is also in doubt. Clearly she had been asked to come by Defendant's mother and had apparently indicated she would be there at some point during the day. At the time defense counsel requested the one day continuance, he informed the trial court, "She [T.F.] had to be in court in Mitchell today for an insufficient funds check charge. She has no phone. *I don't know why she isn't here.*" (emphasis added).