**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Michael Charles ERMATINGER,
Defendant–Appellant.**

No. 53030.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 19, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 20, 1988.

Application to Transfer Denied
July 26, 1988.

Daniel P. Card, Alisse Cheryl Camazine, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Michael Ermatinger appeals from a jury conviction of one count of deviate sexual assault in the second degree; § 566.080 RSMo 1978. The trial court, having found him to be a prior offender, § 558.016 and § 557.036.4 RSMo 1978, sentenced him to three years imprisonment. We affirm.

The sufficiency of the evidence is not challenged. Viewed in the light most favorable to the state, the record reveals the following facts.

Appellant, 42, met J.L., the victim, approximately two years prior to trial. J.L. had seen the appellant five or six times between their initial contact and July, 1985, when the charged offenses occurred. J.L. testified that on July 12, 1985, the appellant invited him to appellant's house to look at radio equipment. Arrangements had been made for J.L., with his parents' approval and consent, to visit and spend the night at the home of appellant on July 12, 1985, and Saturday morning, July 13, 1985. J.L. was 16 years old when the events in question occurred.

The record indicates that J.L. arrived at appellant's home at approximately 7:00 p.m. on July 12, 1985. During the course of the evening, the appellant initiated discussion of sexual topics, including the Roman Catholic Church's position on sex, and issues relating to homosexuality. At approximately 12:30 a.m., the appellant pointed to a room and told J.L. to "Go in there," and then said, "Let's take our clothes off." Hoping to deter the appellant, J.L. said that if his father "ever found out that he would kill me." The appellant assured him his father would never hear about it. Appellant then put his hands on J.L.'s neck and "was applying pressure." J.L. then undressed except for his underwear. Appellant continued to insist that J.L. remove his clothing, so J.L. finished undressing. Appellant then engaged in acts of oral intercourse by placing J.L.'s penis in his mouth and other acts to stimulate him sexually.

At approximately 5:00 a.m., J.L. fell asleep until 8:30 a.m. The appellant told J.L. not to tell anyone what happened because J.L. was a minor, and they both would be in a lot of trouble.

J.L.'s mother testified that when she went to the appellant's home in the afternoon to pick up her son, he was crying, and said, "get out of here, get out of here, let's go."

The appellant testified in his own defense. Appellant said that on the night in question, J.L. asked him many questions about sexual matters, including questions concerning homosexuality. He testified that J.L. became frightened and asked him not to tell his father about their conversation. Appellant denied that he had sex

with J.L., stating that he and J.L. slept in separate rooms, and that appellant went to sleep at approximately midnight.

Approximately a year and one-half prior to the night in question, J.L. was hospitalized for psychiatric reasons. Prior to trial, appellant filed a written motion requesting that the court order J.L. to submit to an independent psychiatric examination. As grounds, appellant asserted that the prosecuting witness had a history of psychiatric problems for approximately two years, and on at least one occasion, had attempted suicide. Appellant's motion for psychiatric examination was further accompanied by appellant's motion to compel J.L. and his treating psychiatrist to answer certain deposition questions which had been certified to the court. Essentially, appellant sought to ascertain information about whether J.L. had ever discussed his sexual concerns, his relationship and his fear of his father, and whether he had received any treatment for these problems.

On May 30, 1986, the court overruled appellant's motion to compel J.L. and his treating psychiatrist to answer the deposition questions on the grounds that the information sought was privileged. The court further overruled appellant's motion for an independent psychiatric examination.

On January 20, 1987, appellant renewed his motion to compel J.L. and his treating psychiatrist to answer the deposition questions. The court overruled appellant's motion. That same day, the state filed a motion *in limine* requesting that the court prohibit any inquiry concerning J.L.'s psychiatric treatment and counseling. The state's motion *in limine* was sustained.

■ Appellant's four contentions on appeal concern J.L.'s prior hospitalizations and treatment for psychiatric problems. Appellant first contends that the trial court erred in sustaining the state's motion *in limine*, and in prohibiting the appellant from introducing evidence concerning J.L.'s psychiatric treatment, counseling and prior hospitalizations. The state's motion *in limine* sought to prevent introduction of evidence concerning: counseling and treatment of J.L. prior to the day of the offense;

prior hospitalization of J.L. in November and December, 1983; J.L.'s overdose of medication and possible suicide attempt in 1983; and any discussions or counseling J.L. may have had with school officials prior to the alleged incident. As grounds, the state argued that these matters were not relevant because consent was not an issue in the case. Further, J.L.'s treatment did not show that he was untrustworthy or that he would be untruthful. Prior to trial, in support of its motion *in limine*, the state paraphrased portions of Dr. Eidelman's deposition taken on March 28, 1986. The transcript reads as follows:

> On page 22 of the deposition Ms. Camazine (defense counsel) asked the doctor: 'Based on the treatment that you've had with these individuals and your experience in psychiatry field, do you believe that Jack's concerns about sexual problems were unusual or abnormal?' And his answer was: 'No, because it was more of [sic] an attitude that he had rather than any specific abnormal problem.' The following question: 'was this attitude that he had something that was unusual or abnormal?' And his answer was: 'Well, you might say it's statistically normal. There are a lot of people who [sic] have attitudes about such things and—in the same way that we refer to dirty jokes rather than sexy jokes. And I think many of his problems were simply an extension of that kind of thinking.'
>
> . . . .
>
> And he was further asked in the deposition the question about whether there was anything that came up in the treatment as to *whether this individual (J.L.) was a storyteller or a fabricator, and he indicates that there was nothing to indicate that.* (emphasis added).

Whether or not evidence is relevant "depends upon whether it tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue." *State v. Clark*, 711 S.W.2d 928, 932[5] (Mo.App.1986). Here, evidence concerning J.L.'s prior psychiatric treatment on matters which included fears of homosexuality would not have

been relevant for purposes of attempting to show homosexual tendencies on the part of the victim. Sexual preferences of the victim are not relevant because consent is not an issue in the case.

Appellant argues that the evidence is relevant to support his attack on the credibility of J.L. Appellant contends that J.L.'s allegations resulted from his imagination or fear of his father. However, J.L.'s treatment did not show that he was untrustworthy or that he would be untruthful. Dr. Eidelman, by deposition, stated that there was nothing to indicate that the victim was likely to fabricate stories.

■ The appellant also contends that he should not have been prohibited from introducing evidence concerning J.L.'s psychiatric treatment and counseling by Dr. Eidelman because evidence concerning a person's character or character trait is admissible if it has a bearing on his credibility and veracity. Appellant analogizes the instant case to criminal cases involving self-defense which allow proof of the victim's reputation for violence. *See State v. Blair,* 305 S.W.2d 435, 436[1] (Mo.1957); *State v. Parker,* 214 S.W.2d 25, 27[3] (Mo.1948). However, proof of the victim's reputation cannot be shown by specific acts. *State v. Duncan,* 467 S.W.2d 866, 867[2] (Mo.1971); *State v. Toland,* 708 S.W.2d 293, 295[5] (Mo.App.1986).

In *Duncan,* the Missouri Supreme Court held that a defendant who pleaded self-defense to the charge of second-degree murder was not entitled to introduce the police record of the deceased to show deceased's violent and turbulent nature, inasmuch as the record pertained to specific acts of violence having no connection with defendant. The court said:

> It has long been the rule in this state that where the defense is self-defense evidence is competent to prove that the deceased bore the reputation of being of a violent and turbulent disposition or character, but that such must be proved by testimony concerning his general reputation and *not by evidence of specific acts of violence having no connection with defendant.*

*Id.* at 867[1, 2].

*Duncan* is analogous to the case at bar, in that the evidence offered by the appellant involved specific acts of the victim's prior hospitalization, and specific statements made by J.L. at various times. Therefore, the trial court properly refused to admit the appellant's offered evidence concerning specific acts and statements made by the victim during his prior hospitalization and psychiatric treatment.

Appellant's third point is similar to his first point, in that he contends that the trial court abused its discretion in prohibiting the appellant from inquiring of J.L. on cross-examination about his prior hospitalization and psychiatric treatment, as well as his concerns about homosexuality and his relationship with his father. Appellant alleges that such evidence was relevant and material to appellant's attack on J.L.'s credibility, veracity, and the plausibility of his testimony.

The appellant directs our attention to a line of cross-examination of J.L. whether he had ever felt attracted to a man. The transcript reads as follows:

MS. CAMAZINE: (defense counsel) You also indicated that Mike said that he felt attracted to men.

J.L.: Yes.

MS. CAMAZINE: Did you ever feel attracted to a man before?

J.L.: No.

MS. CAMAZINE: Did you ever feel attracted to any male before?

J.L.: No.

MS. CAMAZINE: Were you ever concerned about being a homosexual before?

MR. BAKER: Well, your Honor, I am going to object to this. This is not relevant.

THE COURT: Any comment?

MS. CAMAZINE: Judge, I think it's relevant. It goes to his credibility. It goes to the things that he said they talked about and it goes to the things that he said they did not talk about.

THE COURT: Sustained.

MS. CAMAZINE: During these conversations about homosexuality, did you ever tell Mike not to tell your father what you talked about that night?

J.L.: I told Mike, because at this point I was very disturbed, about my dad. We had talked about my dad and, of course, I did not want him telling my dad anything I was talking about regarding my dad. Now, as far as this other material about homosexuality, I did not indicate I did not want him to tell my dad. I really didn't care at that point.

MS. CAMAZINE: What is your relationship with your father?

MR. BAKER: Your Honor, I object to that. It's irrelevant.

. . . .

THE COURT: The objection is sustained.

Appellant argues that an entry in J.L.'s hospital records clearly contradicts his trial testimony, and that the trial court erred by precluding appellant from conducting an effective cross-examination of J.L. A nurse noted on October 26, 1983, that:

Jack indicated guilt concerning an experience with a neighbor child (a male one-year younger). Jack had 'treated him badly' in an argument, asked the child to spend the night and hugged the child while telling him 'I love you'. Jack expressed fear that these feelings indicate homosexuality and fear that the neighbor will relate this incident to his father.

We observe at the outset that the trial court's ruling on the proper scope of cross-examination will not be reversed on appeal absent a showing of a clear abuse of discretion. *State v. Pospeshil*, 674 S.W.2d 628, 634[16] (Mo.App.1984). Here, even if counsel had asked his question and received the response he wanted, the answer would only have been relevant had consent been an issue. The sexual preferences of J.L. are not relevant because he was under the age of 18.

Furthermore, specific acts of the victim's prior hospitalization and specific statements made by J.L. during his psychiatric treatment are not admissible as proof of character of the victim. *See State v. Dun-can*, 467 S.W.2d 866, 867[1, 2] (Mo.1971). Therefore, the trial court properly limited the scope of cross-examination of the victim.

In appellant's second point, he alleges that the trial court erred by overruling his pre-trial motion to compel the prosecuting witness, J.L., to submit to an independent psychiatric examination. Appellant requested a psychiatric examination on the ground that it was "necessary to determine whether or not the witness is competent to testify and whether or not the witness was competent at or near the time of the alleged incident."

■ The state argues that the appellant has failed to preserve the issue for appellate review. We agree.

■ A ruling on a pre-trial motion is interlocutory and, hence, is not an appealable order. *State v. Cutts*, 694 S.W.2d 804, 809[9] (Mo.App.1985). Because a pre-trial ruling is only interlocutory, it has been observed that "additional information produced at trial may prompt the trial court to alter its pre-trial ruling and admit the evidence." *State v. Evans*, 639 S.W.2d 820, 822[1] (Mo.1982).

The record reveals that on May 30, 1986, appellant filed his written motion for psychiatric examination. Judge Sprague overruled the motion.

Judge Provaznik presided over appellant's trial on January 20, 1987. The motion was not renewed at trial. In hearing argument on other pre-trial motions, Judge Provaznik said, "I don't know what reason the other court or other division of this court, which may have overruled the motion for a psychiatric examination, would have had." Appellant's pre-trial motion to compel J.L. to submit to a psychiatric examination was never presented to the trial court for reconsideration at the commencement of trial. Appellant suggests in his reply brief that "[t]o accept the state's contention would mean that if the court, at the commencement of trial, were to accept a defendant's argument, *a continuance and delay in the trial could have to be ordered*." (emphasis added). Appellant's

assertion recognizes that, although such an order would have necessitated a continuance, Judge Provaznik could, in fact, have changed Judge Sprague's ruling and could have ordered J.L. to submit to a psychiatric exam. Appellant seems to argue that raising the motion to compel a psychiatric examination on the day of appellant's trial would have been futile, in that the court would not likely have granted such a request. Appellant's doubt that the motion would have been sustained is mere speculation. Judge Provaznik had the power to grant appellant's motion and continue the trial. Appellant's failure to present his motion for psychiatric examination to the trial court for reconsideration at the commencement of trial leaves nothing for our review. Point denied.

In his final point, appellant argues that the trial court erred in refusing to compel J.L. and his treating psychiatrist, Dr. Eidelman, to answer deposition questions concerning discussions they had in the course of J.L.'s treatment. Appellant contends that the court's ruling "substantially hampered and interfered with appellant's right to conduct pre-trial discovery and to prepare for trial."

The trial court overruled the appellant's motion to compel on May 30, 1986, finding that the following questions posed to J.L. on deposition involved privileged information: "What was the content of those conversations?", and "Did you ever have any conversations with Dr. Eidelman about your sexual concerns?" The court further overruled appellant's motion to compel answers to the following questions posed to Dr. Eidelman on deposition: "Doctor, could you tell me what the nature of the sexual problems that J.L. were having were?", and "Can you explain to me in more detail what you mean about anxiety about inner feelings?" The appellant renewed his motion to compel prior to the commencement of trial on January 20, 1987.

In argument on the motion, the prosecutor informed the court that he had advised J.L. that questions referring to conversations he had with his psychiatrist fell under the statutory physician-patient privilege

and that J.L. should not "divulge those conversations unless he was ordered to by the court." The prosecutor further argued that the matters were not relevant.

Appellant's counsel argued that any statutory privilege had been waived when J.L. testified on deposition that he was under the treatment of Dr. Eidelman. J.L. also answered a question concerning whether Dr. Eidelman had ever prescribed him any medication.

The court concluded that since J.L. was a minor at the time of the deposition, he could not waive his statutory physician-patient privilege. Accordingly, the court overruled appellant's motion to compel.

Appellant argues that the depositions taken of J.L. and Dr. Eidelman are permitted by Rule 25.12, which provides in part that:

a defendant in any criminal case pending in any court may obtain the deposition of any person on oral exam or written questions. The manner of taking such depositions shall be governed by the Rules relating to the taking of depositions in civil actions.

Rule 56.01(b)(1) provides that:

[p]arties may obtain discovery regarding any matter, *not privileged, which is relevant* to the subject matter involved in the pending action.... (emphasis added).

As stated earlier in this opinion, the information sought by appellant would not have been relevant for the purpose of attempting to show homosexual tendencies on the part of the victim. Sexual preferences of the victim are not relevant because consent is not an issue in the case.

■ We also find that the information sought by appellant is privileged. Section 491.060(5) RSMo 1986 provides that a physician or surgeon is incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

This privilege applies to criminal cases as well as civil cases. *Gozenbach v. Ruddy*, 645 S.W.2d 27, 28 (Mo.App.1982); *State ex rel. Mehle v. Harper*, 643 S.W.2d 643, 644[3] (Mo.App.1982). The privilege belongs to the patient, not the physician, and it may be waived by the patient. *State ex rel. Stufflebaum v. Appelquist*, 694 S.W.2d 882, 885[1] (Mo.App.1985).

Appellant argues that any statutory privilege had been waived when J.L. testified on deposition that he was under the treatment of Dr. Eidelman. In *State ex rel. Gozenbach v. Eberwein*, 655 S.W.2d 794, 796[2, 3] (Mo.App.1983), the court addressed what constitutes a waiver under the physician-patient privilege. The court said:

> Section 491.060 is phrased in terms of incompetency of the physician to testify. However, the statute has been held, not to be an absolute bar to a physician's testimony, but rather, to confer upon the patient a privilege to exclude the testimony of his physician, a privilege which may be waived. *State ex rel. Husgen v. Stussie*, 617 S.W.2d 414, 416 (Mo.App. 1981). "To make out a case of implied waiver there must be a clear unequivocal and decisive act showing such purpose, or acts amounting to an estoppel." *Fitzgerald v. Metropolitan Life Insurance Co.*, 149 S.W.2d 389, 391[2, 3] (Mo.App. 1941).

*Eberwein*, 655 S.W.2d at 796[2, 3].

J.L. testified by deposition that he was under the care of Dr. Eidelman. He also answered a question concerning whether Dr. Eidelman had ever prescribed medication. J.L.'s responses to those two questions were insufficient to show an implied waiver because he did not clearly indicate that his purpose was to abandon the physician-patient privilege. Rather, it was consistent with his intention to reveal confidential information only to the extent necessary to disclose that Dr. Eidelman was his treating physician. He did not waive any right to the confidentiality of the nature of discussions pursuant to that treatment.

Appellant argues that since the crime with which he was charged, deviate sexual assault, § 566.080 RSMo 1978, involved acts which by definition constitute "sexual abuse" within the meaning of § 210.110 RSMo 1986, that no privilege existed. We disagree.

The appellant's argument is based on § 210.140 RSMo 1986, which provides:

> any legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect and *shall not constitute grounds for failure to report as required or permitted by Sections 210.110 to 210.165, to cooperate with the division in any of its activities pursuant to Sections 210.110 to 210.165, or to give or accept evidence in any judicial proceeding relating to child abuse or neglect.* (emphasis added).

Section 210.140 RSMo 1986 applies to criminal as well as civil cases. *State ex rel D.M. v. Hoester*, 681 S.W.2d 449, 451[5] (Mo. banc 1984); *State v. Brydon*, 626 S.W.2d 443 (Mo.App.1981).

In *Hoester*, a proceeding in prohibition following a damage action for intentional tort, the relator had been the defendant against his adopted daughter's allegations that she had been repeatedly assaulted and sexually molested. The defendant had sought to prevent his psychiatrist from testifying concerning treatment of the defendant for his abusive nature. The court said that the physician-patient privilege "will not apply or protect those involved in child abuse or neglect." 681 S.W.2d at 451. The court further noted that § 210.140 "makes manifest its intent that those who must 'report' and 'cooperate' under the terms of the child 'protection' and 'abuse' statutes will not be heard to raise the privilege in those cases where appropriate action might be taken to invoke sanctions or require such reporting or cooperation with 'the division.'" *Id.* at 451. Accordingly, the *Hoester* court concluded that this invocation of the physician-patient privilege violated the intent of § 210.140, to assist in the reporting of child abuse.

We find no support for appellant's claim under § 210.140 that no physician-patient privilege existed. Accordingly, the trial court properly refused to compel J.L. and his treating psychiatrist, Dr. Eidelman, to answer questions concerning their discussions in the course of J.L.'s treatment, because such evidence fell within the statutory physician-patient privilege.

Judgment affirmed.

KAROHL, P.J., and SMITH, J., concur.