1999 SD 12

**STATE of South Dakota Plaintiff and Appellee,**

v.

**Trey L. KARLEN, Defendant and Appellant.**

No. 20299.

Supreme Court of South Dakota.

Argued Oct. 21, 1998.

Reassigned Dec. 16, 1998.

Decided Feb. 3, 1999.

Rehearing Denied March 11, 1999.

Mark Barnett, Attorney General, Clyde R. Calhoon, Brookings County State's Attorney, Brookings and William Mark Kratochvil, Brookings County Deputy State's Attorney, Brookings, for plaintiff and appellant.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellant.

James F. Sheklteon, General Counsel, South Dakota Board of Regents, Pierre, for Amicus Curiae South Dakota Board of Regents.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Karlen appeals his conviction of two counts of second degree rape, three counts of unauthorized distribution of a substance with moderate potential for abuse and three counts of sexual contact without consent with person capable of consenting. We affirm as to issues one, two and four and reverse and remand with instructions as to issue three.

## FACTS

[¶ 2.] Trey Karlen was business manager and publicity director for the South Dakota State University (SDSU) Theater. On August 15, 1996, he was indicted in Brookings County on a thirteen-count indictment. The charged crimes, which occurred between October 31, 1994, and July 8, 1996, involved male victims associated with the SDSU theater community. The indictment included five counts of sexual contact without consent with person capable of consenting; three counts of second degree rape; and five counts of unauthorized distribution of a substance with moderate potential for abuse. Karlen pled not guilty to all charges. On December 19, 1996, following a hearing on the parties' motions, counts eleven (unauthorized distribution of a substance with moder-

ate potential for abuse) and twelve (sexual contact without consent with person capable of consenting) of the indictment were dismissed.

[¶ 3.] On January 4, 1997, the state's attorney notified Karlen that the State intended to dismiss the charges in the indictment. The charges were formally dismissed on January 6, 1997. One week later, Karlen was indicted on fourteen counts. The crimes charged included three counts of second degree rape;[1] six counts of sexual contact without consent with person capable of consenting;[2] and five counts of unauthorized distribution of a substance with moderate potential for abuse.[3] Karlen pleaded not guilty to all counts.

[¶ 4.] The trial on these charges commenced on September 2, 1997. Karlen was found guilty on two counts of second degree rape, three counts of unauthorized distribution of a substance with moderate potential for abuse,[4] and three counts of sexual contact without consent with person capable of consenting.

[¶ 5.] In this appeal, Karlen raises the following issues:

1. Whether the trial court erred in denying Karlen's motion to dismiss.

2. Whether the trial court erred in not granting Karlen a continuance because of the unavailability of a witness.

3. Whether the trial court erred in granting a motion to quash a subpoena issued by the defense on Henry Fulda.

4. Whether the trial court erred in denying Karlen's motion for a judgment of acquittal as to Count IV.

1. Second degree rape is a violation of SDCL 22–22–1(4) which, in part, provides:
   Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
   . . . .
   (4) If the victim is incapable of giving consent because of any intoxicating, narcotic or anesthetic agent or hypnosis[.]

2. These six counts are in violation of SDCL 22–22–7.4, which states:
   No person fifteen years of age or older may knowingly engage in sexual contact with another person other than his spouse who, al-

## STANDARD OF REVIEW

[¶ 6.] We review a trial court's findings of fact under the clearly erroneous standard. *State v. Westerfield,* 1997 SD 100, ¶ 8, 567 N.W.2d 863, 866. A trial court's evidentiary rulings "are presumed correct and are reviewed under an abuse of discretion standard." *State v. Larson,* 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17 (citation omitted). "The construction of [a] statute and its application to [the] facts present questions of law, which we review de novo." *State v. Springer–Ertl,* 1997 SD 128, ¶ 4, 570 N.W.2d 39, 40. "In reviewing the denial of a motion for judgment of acquittal, the ultimate question is whether the evidence was sufficient to sustain the conviction." *Larson,* 1998 SD 80 at ¶ 9, 582 N.W.2d at 17.

## DECISION

[¶ 7.] **1. The trial court did not err in denying Karlen's motion to dismiss.**

[¶ 8.] Karlen claims the trial court should have dismissed the charges because the 180–day rule was violated. He also claims the charges should have been dismissed, because he was denied his right to a speedy trial. We disagree with both claims.

[¶ 9.] *a. 180–Day Rule.*

[¶ 10.] SDCL 23A–44–5.1, which is the 180–day rule, provides, in pertinent part:

(1) Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days, and such time shall be computed as provided in this section.

(2) Such one hundred eighty day period shall commence to run from the date the

though capable of consenting, has not consented to such contact.

3. Unauthorized distribution of a substance with moderate potential abuse is a violation of SDCL 22–42–3, which provides in pertinent part:
   [N]o person may manufacture, distribute or dispense a substance listed in Schedule III; possess with intent to manufacture, distribute, or dispense a substance listed in Schedule III[.]

4. Acetaminophen/Codeine # 3 was the substance Karlen distributed.

defendant has first appeared before a judicial officer on an indictment, information or complaint.

[¶ 11.] Karlen contends the State's dismissal of the August 15, 1996, indictment and its decision to reindict him on January 13, 1997, caused the 180-day rule violation. He claims that the trial would have been held within the 180-day time frame had the dismissal and reindictment not occurred.[5] We find these claims to be without merit. By using either date, Karlen cannot establish an 180-day rule violation.[6]

[¶ 12.] This Court has adopted a two-part test for determining the date from which the 180-day period begins to run when an initial indictment has been dismissed and the defendant is reindicted. *State v. Lowther*, 434 N.W.2d 747, 751 (S.D.1989); *see also State v. Tiedeman*, 433 N.W.2d 237, 239–40 (S.D.1988) (applying the Pennsylvania court's two-pronged test to determine the date on which the 180-day period begins to run). The 180-day period commences when the defendant has first appeared on the reindictment if "(1) the earlier indictment was properly dismissed by a competent judicial officer and (2) the record does not reveal evidence of a prosecutorial attempt to circumvent the 180-day rule." *Lowther*, 434 N.W.2d at 751 (citing *Tiedeman*, 433 N.W.2d at 239) (other citations omitted).

[¶ 13.] After closely reviewing the record, we find no evidence to show the original indictment was improperly dismissed. Moreover, nothing in the record reveals that the State dismissed the charges in the original indictment to circumvent the 180-day rule. The record shows that both prongs of *Lowther* have been satisfied. Therefore, we conclude the 180-day period commenced when Karlen first appeared on the reindictment, which was February 5, 1997.

[¶ 14.] Moreover, a review of the record reveals that much of the delay was attributable to Karlen. At the February 5, 1997, arraignment, the State indicated it was ready to proceed with trial at any time the court and Karlen's counsel, David Gienapp, would be available. The trial was tentatively set to begin on May 13. The date was tentative, because Gienapp was involved in another trial that he felt might conflict with the May trial date. The conflict did, in fact, arise. On April 14, Gienapp, by letter, informed the court and the prosecutor that he would be unavailable for the May trial dates because of the conflict. On April 25, the court, Karlen, one of Gienapp's associates, and the prosecutor, held a telephonic conference to determine the manner in which the parties should proceed. The court informed the parties it was treating Gienapp's April 14 letter as a motion for a continuance and, thus, granted the continuance. The court then tolled the 180-day rule until the date of trial, which was set for September 2, 1997. Clearly, this demonstrates the delay was not the result of the State's actions and that the 180-day rule was not violated.

[¶ 15.] Karlen further asserts SDCL 23A–44–5.1 prohibits a reindictment from starting a new 180-day period. This contention is erroneous. The language of SDCL 23A–44–5.1 is clear and unambiguous. *See Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (citing *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17) (stating that when the language of a statute is clear and unambiguous, our function is to declare its meaning as it is expressed). The rule

---

5. Karlen concedes that under SDCL 23A–44–2 the prosecution had the right to dismiss the indictment in the manner that it did, but he continues to argue that the dismissal interfered with his rights.

6. Karlen first appeared on the initial indictment on September 3, 1996, the date the 180-day period commenced running. However, on that same day, when determining an available date for trial, the court stated that it would like to have the time tolled until the first trial date available after January 1, 1997. The trial was set for January 6, 1997. The period, then, between September 3 and January 6, would be excluded from the computation of the 180 days. In addition, the time period between defense counsel's request for continuance on April 14, 1997, and the granting of the continuance on April 25, must also be excluded from the calculation, as must the period from the granting of the continuance until the September 2, 1997, trial date. Clearly, the 180-day rule was not violated, even if, as Karlen argues, the time should be computed from his initial appearance on the first indictment.

addresses five things: (1) the 180–day requirement; (2) the commencement of the time period following an indictment, information, or complaint; (3) the commencement of the time period following an order for a new trial, a trial following a mistrial, and the filing of a mandate on remand; (4) the time periods excluded in computing the time for trial; and (5) the dismissal of the charges with prejudice if the defendant is not brought to trial within the 180–day time frame. Nothing in the language of the rule can be interpreted to prohibit a reindictment from starting a new 180–day period.

[¶ 16.] *b. Right to a speedy trial.*

[¶ 17.] The Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution guarantee a defendant the right to a speedy trial. *See State v. Jones*, 521 N.W.2d 662, 666 (S.D.1994). Karlen claims he was denied this right through the State's dismissal of the first indictment and subsequent reindictment on January 13, 1997. He further contends he was prejudiced by the delay, because a "critical" defense witness, who would have been available for the January trial, was not available for the September trial.

[¶ 18.] When determining whether a defendant's right to a speedy trial has been denied, this Court considers four factors. *Jones*, 521 N.W.2d at 668. We must consider: "(1) The length of the delay; (2) the reason for the delay; (3) whether the accused asserted the right [for a speedy trial]; and (4) whether the accused was prejudiced by the delay." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 116–7 (1972)); *See State v. Goodroad*, 521 N.W.2d 433, 437 (S.D.1994).

[¶ 19.] The first factor, length of the delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *State v. Holiday*, 335 N.W.2d 332, 334–35 (S.D.1983) (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117). However, if a delay is determined to be "presumptively prejudicial," the other factors must be considered.

*See Goodroad*, 521 N.W.2d at 437 (citing *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)).

[¶ 20.] This Court has found delays of more than one year to be presumptively prejudicial. *See Jones*, 521 N.W.2d at 668 (fourteen-month delay was presumptively prejudicial); *Goodroad*, 521 N.W.2d at 437–41 (twenty-seven-month delay was presumptively prejudicial, but dismissal was denied because the defendant was responsible for much of the delay); *State v. Krana*, 272 N.W.2d 75, 77–78 (S.D.1978) (thirty-nine-month delay was presumptively prejudicial, but dismissal was denied because the defendant was responsible for much of the delay); *State v. Black Feather*, 249 N.W.2d 261, 264 (S.D.1976) (thirty-three-month delay was presumptively prejudicial); *State v. Starnes*, 86 S.D. 636, 651, 200 N.W.2d 244, 253 (1972) (twenty-five-month delay resulted in dismissal of charges). We have also found no presumption of prejudice in delays of less than eight months. *See State v. Stock*, 361 N.W.2d 280, 284 (S.D.1985) (delay of seven months was not enough to constitute a constitutional violation); *Holiday*, 335 N.W.2d at 335 (five-month delay was not presumptively prejudicial); *State v. Pickering*, 87 S.D. 331, 338, 207 N.W.2d 511, 515 (1973) (four-month delay was not sufficient to require dismissal of charges).

[¶ 21.] In this case, Karlen claims the length of delay is nine months. He concedes this delay may seem insignificant "in light of delays seen in other cases where a speedy trial issue has been raised." We agree with his concession. Because a nine-month delay is not presumptively prejudicial, the other factors need not be considered. We, therefore, hold that Karlen's right to a speedy trial was not violated.

[¶ 22.] **2. The trial court did not abuse its discretion by denying Karlen a continuance because of the unavailability of a witness.**

[¶ 23.] A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard. *State v. Letcher*, 1996 SD 88, ¶ 29, 552 N.W.2d 402,

407. Reversal of the trial court's ruling is proper only upon a clear showing of abuse. *Id.* Under the standard, "[t]he test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Larson*, 1998 SD 80 at ¶ 10, 582 N.W.2d at 17 (quoting *Goodroad*, 1997 SD 46 at ¶ 9, 563 N.W.2d at 129) (citation omitted).

[¶ 24.] When a witness is unavailable, three requirements must be met for the defendant to obtain a continuance. *Letcher*, 1996 SD 88 at ¶ 30, 552 N.W.2d at 407. First, the testimony of the absent witness must be material. Next, due diligence must be used to secure the witness' attendance or deposition. Finally, it must be "reasonably certain the presence of the witness or his testimony will be procured by the time to which the trial would be postponed." *Id.* (citing *State v. Davies*, 33 S.D. 243, 247–8, 145 N.W. 719, 720 (1914) (citation omitted)). However, if the defendant has failed to establish any of the three requirements, the court has not abused its discretion in denying the continuance. *Davies*, 33 S.D. at 248–9, 145 N.W. at 720 (citation omitted).

[¶ 25.] Here, Karlen has not established the first requirement. Although he claims that the absent witness, Mike Barnett, was a "critical" witness to the charges involving two of his accusers, he has provided no evidence that Barnett's testimony was material. He claims that he anticipated Barnett's testimony would contradict the two accusers' testimony, but nothing in the record supports this claim. Clearly, unsupported claims are not sufficient to establish that testimony is material. Karlen makes no showing of the contents of Barnett's proposed testimony nor of his knowledge of the crimes charged. Further, he gives us no reason to believe Barnett's testimony would help the defense.

[¶ 26.] We hold, therefore, that the trial court did not abuse its discretion in denying the continuance.

[¶ 27.] **3. The trial court erred in granting a motion to quash a subpoena issued by the defense to Henry Fulda.**

[¶ 28.] Karlen issued a subpoena duces tecum in an attempt to obtain Addison Johnston's (Johnston) records from Dr. Henry Fulda (Fulda), a counselor at SDSU Counseling Center. The jury determined that Johnston was one of Karlen's victims. Karlen claims, at the very least, the counseling records should have been reviewed in camera to determine whether exculpatory or contradictory information was present. Karlen contends since the record shows Johnston had given varying statements regarding the incidents with which Karlen was charged, the counseling records contain additional evidence that may go to Johnston's credibility or even exonerate Karlen.

[¶ 29.] Karlen was convicted on eight of the fourteen counts in the indictment. Three of these counts involved Johnston: Count X, a conviction for Rape in the Second Degree; Count XII, a conviction for Unauthorized Distribution of a Substance with Moderate Potential for abuse and; Count XIV, a conviction for unauthorized Distribution of a Substance with Moderate Potential for abuse.[7] At trial, Johnston testified regarding these incidents. Johnston admitted he had given several previous statements contrary to his trial testimony.[8]

---

7. As such, we affirm on the remaining counts upon which Karlen was convicted as they do not involve Johnston.

8. It is important to note that at the time of each occurrence for which Karlen was charged, Johnston was using marijuana and other drugs to such an extent that he literally passed out. Johnston's testimony depicts his state of mind during the nights the incidents occurred.

Q: You would just take all of those drugs?
A: Yes.
Q: Along with smoking marijuana?
A: Yes, sir.

Q: How long did that continue ... ?
A: Into the night. But I was playing cribbage ... and I couldn't finish the game.
* * *
Q: So, you couldn't complete a cribbage game?
A: No, sir.
Q: Why not?
A: Because I wasn't concentrating very well. My——I couldn't keep focused in on the game. I was kind of in a zone, I guess.
Q: What do you mean by kind of in a zone, Addison?

[¶ 30.] *a. Waiver of privilege under SDCL 19–13–26.*

[¶ 31.] The State argues the language of SDCL 19–13–21.2 creates a privilege in the student (Johnston) that can only be overcome by waiver. The statute provides, in pertinent part:

No counselor, regularly employed on a full-time basis as a counselor for a private or public college or university in the State of South Dakota, may divulge to any other person, or be examined concerning any information or communication given to the counselor in his official capacity by a client unless:

(1) This privilege is waived in writing by the student; or

(2) The information or communication was made to the counselor for the express purpose of being communicated or of being made public.

Relying solely on the waivers contained within SDCL 19–13–21.2, the State argues no waiver occurred in this case as Johnston did not give Fulda written permission to release the information nor did Johnston provide Fulda with the instructions to publicly communicate the information. However, related statutes must be construed together to determine legislative intent. *Maynard v. Heeren,* 1997 SD 60 ¶ 13, 563 N.W.2d 830, 835. Further, privileges are to be construed narrowly as they constitute a barrier to the search for truth. *State v. Witchey,* 388 N.W.2d 893, 895 (S.D.1986) (citing *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974)).

[¶ 32.] SDCL 19–13–26 states:

A person upon whom *this chapter* confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of *any significant part* of the privileged matter. This section

does not apply if the disclosure itself is privileged. (Emphasis added).

Since 19–13–21.2 is in the same chapter as 19–13–26, SDCL 19–13–26 provides an additional method of waiver that is applicable in this case. The record indicates Johnston, prior to trial, discussed the Karlen incidents with his girlfriend, M.J.E., his aunt on two occasions, two members of the faculty, Dr. James Johnson, and J.D. Ackman, and two other individuals, N.S. and C.W. Johnston also admitted he discussed the Karlen matters in some form with Fulda.[9] Therefore, under SDCL 19–13–26 Johnston has waived his privilege concerning the facts relevant to the charges against Karlen as these conversations with third parties cannot be claimed by themselves to also be privileged.

[¶ 33.] We have held that disclosing information to a third party destroys the privilege. In *State v. Catch the Bear,* 352 N.W.2d 640, 647 (S.D.1984) we interpreted SDCL 19–13–26 to invoke waiver if the client voluntarily discloses the contents of the communication to a third party. *See also State v. McKercher,* 332 N.W.2d 286 (S.D.1983) (statements made by defendant in a telephone conversation with his wife while he was detained in jail were not confidential, were not protected by the spousal privilege and were admissible, since the statements were not made privately or intended to go undisclosed to any other person). Johnston's multiple disclosures prevent him from claiming as privileged any conversation he had with Fulda regarding Karlen.

[¶ 34.] This statutory policy is constitutionally appropriate. The State is seeking to convict Karlen and thus is using the privilege as a sword in that prosecution, not as a shield to protect itself and its citizen from an action by Karlen against them. *Cf. Maynard,* 1997 SD 60 at ¶ 16, 563 N.W.2d at 836.

---

A: Being asleep when you're awake. Numbness, unconsciousness while being conscious.
Q: What caused that?
A: The drugs.

9. The following testimony was brought out by the state's attorney in his questioning of Johnston:
Q: What did you tell [M.J.E.]?

A: I had told her that Trey Karlen sexually harassed me and raped me.
Q: And at that time, [M.J.E.]—she was a student, right?
A: Yes.
Q: What did you—or did you tell anyone in the college admission faculty?
A: I told Henry Fulda.

We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or the defense.... Whatever [the privileges'] origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.

*Nixon,* 418 U.S. at 709–10, 94 S.Ct. at 3108, 41 L.Ed.2d at 1064–5. Before society can force a man to spend a good portion of his adult life in prison, "it is not too much to ask that he be allowed access to relevant information with which to argue to society he is not guilty of that charge." *Black v. Class,* 1997 SD 22, ¶ 24, 560 N.W.2d 544, 550.

[¶ 35.] Thus, the remaining consideration is whether the trial court's refusal to allow inspection of the Fulda records in some reasonable manner is harmless error beyond a reasonable doubt. *State v. Phillips,* 489 N.W.2d 613, 617 (S.D.1992). The burden of proving harmless error rests with the State. *State v. Nelson,* 1998 SD 124 ¶ 7, 587 N.W.2d 439, 443. Rather than being harmless per se, depending on the contents of the Fulda file, it could be a violation of constitutional dimensions.[10]

[¶ 36.] *b. Confrontation Clause.*

[¶ 37.] The Sixth Amendment of the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." US Const amend VI. The South Dakota Constitution provides similar protections: "In all criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face...." SD Const art VI, § 7. The so-called Confrontation Clause provides two specific protections for criminal defendants. *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). The first is being the right to face his accusers and the second is the right to cross-examine those who testify against him. *Id.*

[¶ 38.] It is well settled that the right to cross-examine is not absolute. *Id.* at 53, 107 S.Ct. at 999, 94 L.Ed.2d at 54–5. The ability to cross-examine witnesses does not include the power to compel production of all information that *may* be useful to the defense. "[T]he Confrontation Clause only guarantees an opportunity for *effective* cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 53, 107 S.Ct. at 999, 94 L.Ed.2d at 54 (emphasis added). Therefore, we must consider whether Karlen was denied an opportunity for effective cross-examination because he could not use the privileged information to cross-examine Johnston.

[¶ 39.] When it comes to the production of material covered under a statutory privilege, the defendant will often not be able to access the privileged information. "Every privilege limits the evidence available in the judicial fact-finding process." *Maynard,* 1997 SD 60 at ¶ 8, 563 N.W.2d at 833 (citation omitted). The public has an interest in protecting such information as it encourages patients to be open and candid with their counselors. *Id.* However, it is a basic provision of American jurisprudence that a statu-

---

10. The trial court, when it refused to require production of the documents, stated that SDCL 19–13–26 did not apply as "[t]here was no disclosure of any part of the privileged matter." The record does not support this conclusion. As an example Johnston testified:

Q: And what did you tell [Ackman] had happened?

A: I told him that Trey Karlen had raped me. Compare with Johnston's description to Fulda in footnote 9: "Trey Karlen sexually harassed and raped me."

tory provision never be allowed to trump a Constitutional right. "The Constitution is the mother law. . . . Statutes must conform to the Constitution, not vice versa." *Beals v. Pickerel Lake Sanitary Dist.*, 1998 SD 42, ¶ 36, 578 N.W.2d 134, 142 (Sabers, J. dissenting and alternatively concurring in result) (citing *Poppen v. Walker*, 520 N.W.2d 238, 242 (S.D.1994) (quoting *Cummings v. Mickelson*, 495 N.W.2d 493, 507 (S.D.1993) (Henderson, J., concurring in part and dissenting in part)).

[¶ 40.] In *Ritchie* the Supreme Court considered the question of whether a state's interest in the confidentiality of its child abuse investigation files must yield to a defendant's Sixth and Fourteenth Amendment right to discover favorable evidence. In that case, the defendant was charged with the rape of his minor child. He had subpoenaed Child and Youth Services (CYS) to disclose a file related to the charge and certain other records. *Id.* at 43, 107 S.Ct. at 994, 94 L.Ed.2d at 48. CYS refused, claiming that under a Pennsylvania statute the records were privileged. *Id.* The trial court refused to compel disclosure. *Id.* at 44, 107 S.Ct. at 994, 94 L.Ed.2d at 49. This particular statute provided several exceptions to the privilege, one being the material would be disclosed to a court of competent jurisdiction pursuant to a court order. *Id.* at 43–4, 107 S.Ct. at 994, 94 L.Ed.2d at 49. The judge denied the defendant's motion to compel production. *Id.* at 44, 107 S.Ct. at 994, 94 L.Ed.2d at 49.

[¶ 41.] The Supreme Court considered Ritchie's claim that he was denied his right to cross-examine the witness. The Court noted that the Confrontation Clause does not create a "constitutionally compelled rule of pretrial discovery." *Id.* 480 U.S. at 52, 107 S.Ct. at 999, 94 L.Ed.2d at 54. "[T]he Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 53, 107 S.Ct. at 999, 94 L.Ed.2d at 55. The Court found that due process principles required an in camera review of privileged material. *Id.* at 56–7, 107 S.Ct. at 1001–2, 94 L.Ed.2d at 57–8. This was especially true when the evidence was material. *Id.* at 57, 107 S.Ct. at 1001, 94 L.Ed.2d at 57. The Court defined material evidence:

> [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*Id.*[11]

[¶ 42.] A case that is also instructive is *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis* the defendant sought to introduce information regarding the prosecution witness' probation status following an adjudication of juvenile delinquency. *Davis*, 415 U.S. at 310–1, 94 S.Ct. at 1108, 39 L.Ed.2d at 350–1. The defendant sought to show that the witness acted out of fear or concern of possible jeopardy to his probation and might have made a faulty identification of the defendant to shift suspicion

11. Furthermore, many courts of competent jurisdiction have used the *Ritchie* analysis to allow a criminal defendant an in camera inspection of privileged information. *See In re Robert H.*, 199 Conn. 693, 509 A.2d 475 (1986) (in camera inspection of records of sexual assault counselor should be conducted to determine whether consistent and relevant statements of the victim should be disclosed to defendants); *State v. Leduc*, 40 Conn.App. 233, 670 A.2d 1309 (1996) (remanded as defendant was entitled to an in camera inspection of confidential records from department of children and families); *People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557 (1994) (where defendant can establish reasonable probability that privileged records are likely to contain material information necessary to defense, in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary to defense); *State v. Paradee*, 403 N.W.2d 640 (Minn.1987) (defendant, who was charged with criminal sexual conduct, moved for discovery of human services and welfare department records, the court held that evidence requested by the defendant should be viewed in camera by the court to determine whether information contained therein is relevant to defense prior to releasing privileged information); *State v. Shiffra*, 175 Wis.2d 600, 499 N.W.2d 719 (1993) (defendant had made a preliminary showing of materiality so as to entitle him to pretrial in camera inspection of victim's mental health treatment records); *but see State v. Ermatinger*, 752 S.W.2d 344 (Mo.App. E.D.1988) (physician-patient privilege protected victim's conversations with treating psychiatrist).

away from himself. *Id.* at 311, 94 S.Ct. at 1108, 39 L.Ed.2d at 351. The trial court refused the defendant's request based on state provisions protecting the anonymity of juvenile offenders.[12] *Id.* at 311, 94 S.Ct. at 1108, 39 L.Ed.2d at 351.

[¶ 43.] The Supreme Court found that the trial court's refusal to allow Davis to present evidence regarding the witness' probation status and his possible motivations for identifying the defendant denied him his constitutional right to confront witnesses, notwithstanding the state's policy protecting the anonymity of juvenile offenders. The Court arrived at this conclusion by first considering the purpose of the right of cross-examination that stems from the Confrontation Clause.

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

*Id.* at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. The Court weighed the state's interest in protecting a juvenile offender and the defendant's right to cross-examine the witness and found that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320, 94 S.Ct. at 1112, 39 L.Ed.2d at 356.[13]

[¶ 44.] Karlen claims that by quashing the subpoena duces tecum regarding Johnston's counseling records, the trial court has denied him access to information crucial to prepare his defense, and therefore, interfered with his right to *effectively* cross-examine Johnston. There is no dispute that Johnston has given several different renditions as to what occurred and that he was under the strong influence of alcohol and drugs at the time the incidents ·allegedly took place. If Karlen were allowed access to the counseling file, he may indeed discover that Johnston also gave a different version to Fulda. This is extremely important in this case, and in any sexual assault case, as this goes to Johnston's credibility. Credibility was the key issue at trial since the only evidence from which the jury made its determination to convict Karlen on the three counts was the credibility of Johnston's testimony verses Karlen's testimony. Based on the record before us, this is not a general attack on Johnston's credibility but "directed toward revealing possible biases, prejudices, or ulterior motives . . . as they may relate directly to issues or personalities in the case at hand." *State v. Sprik,* 520 N.W.2d 595, 600 (S.D.1994) (citing *State v. Rough Surface,* 440 N.W.2d 746, 752 (S.D. 1989)). If there was yet another version of the facts in Johnston's counseling records or an indication that the trial testimony was an outright falsehood, there is a 'reasonable probability' that had the evidence been disclosed to the jury, the outcome as to the three counts would have been different.

[¶ 45.] Requiring full disclosure of Johnston's counseling records, however, would run the risk of creating a chilling effect on patient-counselor relationships. There may be substantial portions of the Fulda records

---

12. This statute provided:
    The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceeding in any other court. . . .
    Alaska Stat § 47.10.080(g) (repealed, § 55 ch 59 SLA 1996).

13. Contrary to the argument advanced by the South Dakota Board of Regents in its amicus brief, *Montana v. Egelhoff,* 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) and *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) do not modify *Davis* or *Rit-*

chie. Rather *Egelhoff* and *Scheffer* focus on whether the exclusion of evidence is unconstitutional as it has "infringed upon a weighty interest of the accused." *Scheffer,* 523 U.S. at ——, 118 S.Ct. at 1264, 140 L.Ed.2d at 419. In *Scheffer* and *Egelhoff* the defendants were fully aware of the nature of the evidence they sought to place before the trier of fact. Karlen points out he has not even been allowed an in camera inspection by the trial court to determine if the file contained items that would be exculpatory, let alone full access by Karlen to the Fulda file on Johnston.

which have nothing to do with Karlen and may concern individuals totally unconnected with this case. The purpose of the relationship between a student and a counselor would be hampered if all confidential material had to be turned over upon the defendant's demand. There are methods used to strike a balance in the tension that exists between rights of the accused and the confidences of the patient. A just compromise is an in camera inspection of all relevant records, performed by the trial court. *Sprik,* 520 N.W.2d at 600. *Cf. Maynard,* 1997 SD 60 at ¶ 15, 563 N.W.2d at 835–6. Other states have allowed in camera inspection of privilege material. *Scurry v. State,* 701 So.2d 587 (Fla.App. 2 Dist., 1997) (defendant was entitled to compel production of victim's Department of Health and Rehabilitative Services records for court to conduct an in camera review and determine whether information contained within was necessary to his defense, although it may be a fishing expedition the records may contain some relevant information). At oral argument Karlen stated he would be satisfied with an in camera inspection conducted by the trial court.

[¶ 46.] As Karlen may have been denied his right to effectively cross-examine the witness against him and Johnston has waived his privilege under SDCL 19–13–26, we remand to the trial court with instructions. Karlen has shown a reasonable probability that the records may contain material evidence based on Johnston's own testimony and pre-trial statements. Karlen is entitled to have Fulda's file reviewed by the trial court in camera. *Sprik,* 520 N.W.2d at 599–600. The trial court should make a determination of what the file contains concerning Johnston's discussions of Karlen. Copies of only those relevant portions of Fulda's notes should be furnished to Karlen and the State. After hearing each party's position, the trial court should determine whether the failure to give Karlen access to the relevant portion of the notes created a reasonable probability that the result of the trial would have been different if Karlen was able to use those notes. If it does, Karlen must be given a new trial only on those counts and be allowed access to *only* the parts of the file material to his defense at retrial.

**[¶ 47.] 4. The trial court did not err in denying the motion for acquittal on Count IV.**

[¶ 48.] At the close of the State's case, Karlen moved for judgment of acquittal on count four of the indictment, a violation of SDCL 22–22–7.4, sexual contact without consent with person capable of consenting. The trial court denied the motion. Karlen argues the motion should have been granted, because the State failed to introduce sufficient evidence to establish the crime charged had been committed, or to establish he was the one who committed the crime. We disagree.

[¶ 49.] The standard of review for denial of a motion for judgment of acquittal is whether the "evidence was sufficient to sustain the convictions." *Larson,* 1998 SD 80 at ¶ 9, 582 N.W.2d at 17. "When reviewing sufficiency of the evidence, this [C]ourt considers the evidence in a light most favorable to the verdict." *Jones,* 521 N.W.2d at 672–3 (citing *State v. Blalack,* 434 N.W.2d 55, 59 (S.D.1988)). "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *Id.* at 673 (quoting *Blalack,* 434 N.W.2d at 60). "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence." *State v. White,* 1996 SD 67, ¶ 24, 549 N.W.2d 676, 682 (citing *State v. Andrews,* 393 N.W.2d 76, 80 (S.D.1986); *State v. Blakey,* 332 N.W.2d 729, 731 (S.D. 1983)).

[¶ 50.] Here, when viewing the evidence in the light most favorable to the jury's verdict, we find there was sufficient evidence to support it. The evidence established that on March 5 or 6, 1996, Karlen invited Grimsley to his home. Grimsley, who arrived there at about 11:00 p.m., had been drinking before he arrived and continued to drink throughout the evening. Chad Popham, Karlen's roommate, joined Karlen and Grimsley in the living room to watch movies. However, shortly after the first movie started, Popham went to bed, leaving Karlen and Grimsley alone in the room. Grimsley testified that he

was seated in an armchair, which was in proximity to the couch on which Karlen was seated. Karlen later moved to the floor, near Grimsley's chair. Grimsley also testified that after watching one movie and about forty-five minutes of a second movie, he fell asleep or passed out. When he awakened, the lights were off, the television was turned off, and no one else was around. He found that his lap had been covered with a blanket, which he believed to have been behind or beside the couch earlier in the evening. He further testified that when he stood up, he realized his pants, including his underwear, had been pulled down and that he had ejaculated.

[¶ 51.] We find this evidence could support a rational theory of guilt. A jury could reasonably find Karlen knowingly engaged in sexual contact with Grimsley, who did not consent to the contact. As this Court has stated, if a "jury could reasonably find the defendant guilty, denial of a motion for acquittal will not be disturbed." *White,* 1996 SD 67 at ¶ 24, 549 N.W.2d at 682.

[¶ 52.] Affirmed in part and reversed and remanded in part with instructions.

[¶ 53.] SABERS and AMUNDSON, Justices, concur.

[¶ 54.] MILLER, Chief Justice, and KONENKAMP, Justice, concur in part and dissent in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 55.] I concur with the majority opinion on issues 1, 2, and 4, but respectively dissent as to the majority's opinion on issue 3. I disagree with the majority's holding that Johnston waived his privilege to any conversations he had with Fulda regarding Karlen, and that Karlen is entitled to an in camera review by the trial court of Fulda's records.

[¶ 56.] Generally, "unless there is a privilege, all relevant information is discoverable." *Maynard v. Heeren,* 1997 SD 60, ¶ 12, 563 N.W.2d 830, 835; *see generally* SDCL 15–6–26. South Dakota specifically recognizes the need for privileged communications between university and college students and their in-

stitution-provided counselors. SDCL 19–13–21.2 provides in pertinent part:

No counselor, regularly employed on a full-time basis as a counselor for a private or public college or university in the State of South Dakota, may divulge to any other person, or be examined concerning any information or communication given to the counselor in his official capacity by a client unless:

(1) This privilege is waived in writing by the student; or

(2) The information or communication was made to the counselor for the express purpose of being communicated or of being made public.

[¶ 57.] When interpreting this statute to determine the extent of the privilege, the "'words and phrases in [the] statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.'" *Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17). "This court assumes that statutes mean what they say and that legislators have said what they meant." *Mid–Century Ins. Co. v. Lyon,* 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (citing *In re Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984)).

[¶ 58.] I find the language of SDCL 19–13–21.2 to be clear and unambiguous. The legislature certainly intended that the information revealed to a full-time counselor at a South Dakota university or college be privileged. In addition, it is clear the legislature intended to prohibit the counselor from being examined about the communication. Further, the student is the holder of the privilege and it can only be waived in one of two ways. The student can waive the privilege in writing or by disclosing the information to the counselor for the express purpose of allowing the counselor to communicate the information to others. These are the sole exceptions provided for in the statute.

[¶ 59.] Neither of those exceptions was present in this case. Johnston elected to seek the services of Dr. Fulda, a full-time

counselor at SDSU. He did not give Fulda written permission to disclose any information, nor did he provide him with information so that he could publicly communicate it. Therefore, Johnston did not waive the privilege provided for in SDCL 19–13–21.2.

[¶ 60.] However, the majority argues that Johnston waived his privilege because he discussed the incidents with third parties as well as Fulda. While I agree that a privilege can be waived by disclosure to a third party, that waiver did not occur here. Mere conversation regarding the same incident does not constitute a privilege waiver. It requires much more than that. It requires a specific disclosure of the information the privilege holder shared with the counselor. *See* John W. Larson, South Dakota Evidence § 510.0 (1991) (citing FedREvid 511 (proposed) advisory committee's note) (stating that a privilege, such as the attorney-client privilege, covers the communication, not the subject matter, and that for waiver to occur, the client would have to make a disclosure of the communication itself).

[¶ 61.] Also, the majority cites *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), as holding that "due process principles required an in camera review of privileged material." However, *Ritchie* can easily be distinguished from the instant case. The record sought in *Ritchie* was not of a confidential communication between a university student and his counselor but, rather, was an investigative file compiled by a state agency investigating suspected child abuse. In addition, the relevant Pennsylvania statute allowed the file to be available "to a court of competent jurisdiction pursuant to a court order." *See* PaStatAnn, Tit 11, § 2215(a)(5) (Purdon Supp 1986). The privilege at issue in *Ritchie* was qualified, unlike the privilege here, which is absolute. Further, the *Ritchie* court expressly stated it would offer no opinion as to whether the result would have been different with a statute that forbid anyone from accessing the files, as SDCL 19–13–21.2 does here. 480 U.S. at 58 n. 14, 107 S.Ct. at 1001 n. 14, 94 L.Ed.2d at 57 n. 14.

[¶ 62.] In addition, no review of Fulda's records is required because Karlen has failed to establish that the records are relevant and contain material information. Karlen argued, without supporting his position, that the records contained statements that are "relevant, exculpatory and important to the defense," and are needed to establish Johnston gave contradictory statements. This general assertion of relevance is not enough to require an in camera review of confidential records. *See People v. Dist. Court, City and County of Denver,* 719 P.2d 722, 726 (Colo. 1986) (stating "[t]he vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's anticipated trial testimony does not provide a sufficient basis to justify ignoring the victim's right to rely upon her statutory privilege"); *People v. Stanaway,* 446 Mich. 643, 521 N.W.2d 557, 576 (1994) (stating Stanaway's general assertion that the records were needed to attack an accuser's testimony "falls short of the specific justification necessary to overcome the privilege" and "without a more specific request, defendant is fishing").

[¶ 63.] Moreover, SDCL 19–13–21.2 does not prevent all cross-examination of Johnston. In fact, Karlen had ample opportunity to fully cross-examine Johnston about his allegations and any inconsistent statements he may have made. Fulda's records were not needed to serve that purpose.

[¶ 64.] For the above reasons, I respectfully dissent on issue 3.

[¶ 65.] I am authorized to state that Justice KONENKAMP joins in this special writing.